## LEONARD S. HOXSIE v. EZRA HOXSIE.

*Injunction to regulate the relative Rights of Mill-Owners denied.*

A court of equity cannot define and secure the rights of one litigant without reference to the corresponding rights of the other.

A mill-owner is not entitled to protection against incidental injuries or inconveniencies arising from the lawful use of the same stream by another mill-owner higher up.

An injunction restraining an upper mill-owner from allowing the water to flow over his dam in quantities greater than is required to run his machinery, but requiring him to allow it to flow into another's mill-pond to the amount of the natural flow of the stream, is erroneous, because it discriminates in favor of the lower owner.

Injunction ought not to be granted to regulate the relative rights of mill-owners upon the same stream, except in very clear cases of the intentional violation of those rights; the parties should be left to recover their damages at law.

Appeal from Grand Traverse. Submitted October 30, 1877. Decided January 9, 1878.

INJUNCTION to restrain a private nuisance. Defendant appeals. The facts are in the opinion.

*Edwin S. Pratt* (on brief) for complainant. The law seeks to protect all the mill owners on a stream in the fair participation in the reasonable use of it, and the size of the stream and pond, the height of the banks, and the proximity of the mills determines what is a reasonable use, *Merritt v. Brinkerhoff*, 17 Johns., 306; *Clinton v. Myers*, 46 N. Y., 518.

*B. S. Howe* and *J. G. Ramsdell* for defendant.

COOLEY, J. The bill in this cause was filed to restrain a private nuisance. The chief complaint made by it was that defendant, who was the owner of a saw-mill and foundry on the waters of a stream which empties into Grand Traverse Bay, was accustomed to cast the saw-dust into the stream, whereby the water was rendered unfit for use, the valuable fish therein destroyed or driven away, and complainant's dam for his own mill below gradually filled up. A further grievance, but one which the bill made less prominent, was, that the mill-dam of defendant at times detained the water unreasonably, and at other times allowed it to flow by in unusual quantities, so that complainant was hindered in the operation of his own mill. The evidence in the case was

directed mainly to the first alleged grievance, but the circuit judge found it not established.   The second he found was established, whereupon he proceeded to decree that the defendant

" be restrained and enjoined from allowing the water of said stream to flow over his dam in quantities greater than is required to run both his foundry and saw-mill at one time.   And when defendant is running his saw-mill or foundry, that defendant allow only such quantity of water to escape into complainant's pond as is sufficient to run both defendant's saw-mill and foundry, and when so using the water of said stream in running said mill and foundry, he allow no water to run over his slash boards or waste-gate into complainant's mill-pond, and that at all times during the ordinary working hours of the day that defendant shall allow the water in said stream to flow over his dam into complainant's pond at least to the natural flow of said stream." Also that he "refrain from allowing more water to escape through or over said mill-dam of said defendant into the mill-pond of said complainant than is sufficient to run the saw-mill and foundry of said defendant, at one time, and also that he desist and refrain from detaining the water in said stream during the ordinary working hours of the day from flowing into the pond of said complainant over the dam of said defendant to at least the natural flow of said stream."

This decree is subject to serious criticism in that, if construed literally, it imposes upon the defendant the burden of protecting the complainant against anything, whether attributable to his own act or neglect or not, whereby more water would be made to flow over his dam than would be sufficient for the operation of his machinery. It is not likely this was intended, but the terms of the decree are imperative, and if allowed to stand would be likely to lead to controversy and difficulty.   He must not "allow" the water of the stream to flow over his dam in quantities greater than is required to run his machinery.   No misconduct of the defendant could authorize the court to place him under such an injunction.   But if we assume that the meaning of the court was only this : that the defendant should not by his own act or default cause the water to flow over his dam in quanti-

ties greater than would be required to operate his machinery, and greater than were accustomed to flow, the decree is still objectionable in that it undertakes to fix definitely the rights of the complainant and to secure them to him, unlimited and unaffected by the corresponding rights of the defendant, which are the same in kind and in every respect as perfect and complete.

In *Dumont v. Kellogg*, 29 Mich., 420, 423, it was said that "as between two proprietors neither of whom has acquired superior rights to the other, it cannot be said that one has no right to use the water to the prejudice of the proprietor below him, or that he cannot lawfully diminish the quantity which would descend to the proprietor below, or that he must so use the water as not materially to affect the application of the water below, or materially to diminish its quantity. Such a rule would be in effect this: that the lower proprietor must be allowed the enjoyment of his full common law rights as such, not diminished, restrained, or in any manner limited or qualified by the rights of the upper proprietor, and must receive the water in its natural state as if no proprietorship above him existed. Such a rule could not be the law so long as equality of right between the several proprietors was recognized, for it is manifest it would give to the lower proprietor superior advantages over the upper, and in many cases give him in effect a monopoly of the stream."

The rule which the decree in this case prescribes is not quite so broad as the one above shown to be objectionable, but the differences are not very essential. When defendant is operating his machinery he must restrain the flow of water past him within limits which are precisely indicated, whether a proper adjustment of the right to use, as between himself and the lower proprietor, would require this or not. He could not put in new machinery and operate it by an additional flow of water without a violation of the injunction. He could not take away his dam for repairs without an apparent breach

of the rule of action prescribed for him.    He must not during the working hours of the day detain the water in the least, so as to prevent its flowing over his dam into complainant's pond "at least to the natural flow of said stream."    This is no regulation of rights, but it is a subordination of defendant's rights to those of complainant.    The latter must have at least the natural flow of the stream during the whole working hours of the day, and he must be protected against any greater flow than is required for operating defendant's present machinery.    The purpose here, apparently, is to protect the complainant against any incidental injuries or inconveniencies that might arise from the use of the same stream for milling purposes by the proprietor above; but this is more than he is entitled to, because he cannot have a protection so broad without imposing upon one whose rights are equal and co-ordinate the whole burden of such incidental injuries and inconveniencies. Unless the stream is one of remarkably even flow, and with sufficient water in ordinary stages to operate the machinery upon it, the injustice and inequality of any rule which should preclude the upper proprietor from gathering at any time the waters during the working hours of the day, and from permitting them to flow by him at any time in greater quantities than the needs of his machinery would require, would be apparent.    It would enable the lower proprietor to make a use of the stream from which the upper would at times be excluded, and without the burden of restraints which to the other might at times be very serious.    It would also enable him to annoy the other by insisting upon requirements which might benefit him much less than they would inconvenience his neighbor.

But we are of opinion that complainant in this case did not make out a clear right to any injunction at all. The evidence is very meagre, but at the best it only tends to show that complainant's rights are violated provided his theory of his rights, namely, that he is enti-

tled to an unrestricted flow of the stream during the whole working hours of the day, is sustained. When this theory is rejected, the case falls. We are not satisfied that defendant has exercised his rights unfairly; but if he has in any particular exceeded due bounds, the intention to do so is not sufficiently manifest to justify the process of injunction. In the case of rights like those here in question, that process is not only troublesome but susceptible of great abuses, from the extreme difficulty of laying down any precise rule that will fit the varying circumstances. Except in very clear cases it is generally better to leave the parties to their legal remedy in the recovery of damages.

Our conclusion is that the decree should be reversed and the bill dismissed with costs of both courts.

CAMPBELL, C. J., and GRAVES, J., concurred. MARSTON, J., did not sit in this case.