United States, etc., Paper Co. v. Moore—35 Ind. App. 684.

## UNITED STATES BOARD AND PAPER COMPANY ET AL. v. MOORE.

[No. 4,979.  Filed November 29, 1904.  Rehearing denied June 20, 1905.]

1. APPEAL AND ERROR.—*Assignment.*—*Waiver.*—*Briefs.*—A failure to point out, in appellants' brief, an alleged error is a waiver thereof. p. 685.

2. NEW TRIAL.—*Injunction.*—*Nuisance.* — *Pollution.* — *Evidence.*—A complaint, alleging that defendants operated a strawboard factory and discharged refuse into the river which flowed through plaintiff's farm, is supported, where the proof shows that the refuse was carried by a circuitous route, finally emptying into such river.  p. 689.

3. APPEAL AND ERROR.—*Weighing Evidence.*—*Waters and Watercourses.*—*Pollution.*—In an action to enjoin the pollution of a watercourse, where the evidence is conflicting, voluminous and entirely oral, the Appellate Court will not disturb the decision of the trial court on the ground that such decision is against the weight of the evidence.  p. 689.

4. STATUTES.—*Construction.*—*Appeal and Error.*—*Weighing Evidence.*—The Appellate Court will not weigh conflicting oral evidence under the act of 1903 (Acts 1903, p. 338, §8), in order to determine on which side the preponderance lies.  p. 690.

From Rush Circuit Court; *Douglas Morris,* Judge.

Action by Thomas B. Moore against the United States Board and Paper Company and another.  From a decree for plaintiff, defendants appeal.  *Affirmed.*

*John W. Kern* and *Smith, Cambern & Smith,* for appellants.

*K. M. Hord, E. K. Adams* and *J. D. Megee,* for appellee.

WILEY, J.—Appellee sued appellants in equity to enjoin them from emptying into Blue river, a natural watercourse, refuse matter from their strawboard works, and to recover damages for resulting injuries.  His complaint was in one paragraph, to which demurrers were overruled.  Appellants answered by a general denial.  The trial court made a general finding, denying injunctive relief, but gave appellee judgment for $500 damages.  Appellants' motions for a

new trial were overruled, and by their assignments of error they ask us to review the action of the trial court in overruling said demurrers and also in overruling their respective motions for a new trial.

1. In their brief, counsel for appellants have not pointed out any objection to the complaint, and hence, under the rule, have waived the question presented by the demurrers.

The reasons assigned in the motions for a new trial are that the decision is not sustained by sufficient evidence and is contrary to law.

Appellants rely solely for a reversal upon the insufficiency of the evidence, and, by proper assignments of error, bring their appeal within the act of 1903 (Acts 1903, p. 338), which requires the courts of appeal to weigh the evidence in all cases not triable by a jury.

Before taking up for consideration the question thus presented, it may be important to state the issue tendered by the pleadings. By his complaint, appellee avers that he is the owner and occupant of a farm consisting of 179 acres of land, and that he is engaged in general farming and stock raising; that Blue river—a natural watercourse—flows through Rush county, Indiana, and passes along and over his said farm for a distance of one-half mile; that, prior to the grievances of which he complains, the waters of said stream were clear and reasonably pure and wholesome for drinking water for stock and for all other farming and domestic purposes; that the water in its natural state was a great convenience to appellee, and greatly enhanced the value of his farm; that the water in said river was well stocked with all game and other fishes native to said stream, and that he was accustomed to take fish therefrom for his family use, and that by reason thereof the value of his farm was greatly enhanced; that during all the time he has owned said farm there has been, and still is, situated thereon, a valuable

flouring mill, which is operated by water conducted through a race, the water of which is supplied from said river; that said race extends over and along his farm for a distance of about one-half mile; that he had, at great cost, refitted said mill with necessary machinery, etc., of the latest patterns for the manufacture of flour, meal, etc.; that he operated and still operates said mill as a custom mill, and that, prior to the grievance of which he complains, it was of great profit to him; that since 1891 appellants have operated, managed and controlled a large mill or factory for the manufacture of paper board or strawboard, and other like products, and still continue to manufacture the same; that said mill is located at or near the town of Carthage, on the banks of said river, above appellee's farm; that, in the manufacture of said products, appellants used large quantities of water, straw, lime, etc., and have discharged and continue to discharge from said mill large quantities of waste water and waste refuse, straw, lime and other substances into such watercourse, at a point on the same above appellee's farm, and that the waters below said point where said refuse, etc., is discharged, and on appellee's farm, and about his said mill and race are "thereby corrupted and polluted, and rendered foul, noxious and unwholesome, and wholly unfit for stock water, * * * and for any farm or domestic purposes whatever, and that all the fish in said watercourse below said point were and are thereby destroyed; that said waste and refuse matter so discharged into such watercourse was and is carried by the waters of said stream and deposited in the bed and on the banks of the same on the plaintiff's said farm, and in and about said mill and race, where the same decays and becomes corrupt, noxious and unwholesome; that because of said pollution, noxious, unwholesome and offensive odors are emitted by the waters of said stream, and by foul and decaying waste matters so deposited on said land * * * to the great annoyance and discomfort of the plaintiff and his said family, and whereby the plaintiff's

use and enjoyment of his said property is greatly impaired, and the market and rental value of the same are greatly depreciated;" that, by reason of the grievances above stated, appellee's business in the operation of his said mill was greatly injured and destroyed, and he is deprived of the benefits accruing to him therefrom, all to his great damage, etc. It is further averred that apellants will continue to discharge said refuse matter from their said factory into said stream, to appellee's irreparable damage, unless enjoined. The prayer of the complaint is for injunctive relief and damages for the injuries sustained.

The statute, authorizing appellate tribunals to weigh the evidence on appeal in cases not triable by jury, is as follows: "In all cases not now or hereafter triable by a jury, the Supreme and Appellate Courts shall, if required by the assignment of errors, carefully consider and weigh the evidence and admissions heard on the trial when the same is made to appear by a bill of exceptions setting forth all the evidence given in the cause, and if on such appeal it appears from all the evidence and admissions that the judgment appealed from is not fairly supported by, or is clearly against the weight of the evidence, it shall be the duty of such court to award judgment according to the clear weight of the evidence, and affirm the judgment or return said cause to the trial court with instructions to modify the judgment or to grant a new trial; or to enter such other judgment or decree as to such court of appeal may seem right and proper upon the whole case." Acts 1903, p. 338, §8.

This is the first case, to our knowledge, which has reached the courts of appeal under this statute, where the sole question for decision rests upon the weight of the evidence, and that question properly presented by the assignment of errors. If, in such cases as we are now considering, the chancery practice of former days—of trying a case by deposition or other written evidence—prevailed, appellate judges would have the same opportunity to weigh the evi-

dence as the trial judge, but such is not the case here. We have to consider the oral testimony of witnesses reduced to writing. We are confronted with a record of nearly 900 pages of typewritten evidence, and every word of it is oral. ·There is much evidence to sustain the material averments of the complaint, and equally as much, if not more in volume, against them.

It must be observed that the act of appellants, of which appellee complains, is that they are discharging the refuse matter from their factory into Blue river, and that thereby the waters of the river below the point of discharge are made foul, noxious and impure, causing the damages and conditions detailed in the complaint. If, to sustain these material averments, it was necessary for appellee to prove that the discharge of said refuse matter was immediately from appellants' factory into the river, then there is a total failure of proof, for there is not a word of evidence to support it. Originally, from the date the factory went into operation, such refuse matter was discharged directly into the river, and this was continued until 1895; and since that time, except on one occasion, by reason of an accident, all the refuse matter from the factory has been carried through an open ditch 300 or 400 feet to a point near the river where it enters a flume 800 feet long, made of oak lumber, by which it is carried across the river and emptied into a reservoir which has an area of about twenty-five acres. In this reservoir is a dyke or embankment so constructed as to force the incoming water around the edges of the pond so there would be more opportunity for the settling of the matter in suspension in the fluid. It is nearly 200 rods around the reservoir, and the incoming water has to pass around that distance before it reaches the outlet. It then passes over or through an outlet about twelve feet wide, in a sheet about one-half an inch thick, into a waste bottom land, designated as a bayou. This bayou is caused by back water from a dam across the river. The waste water then·

passes through this bayou about three-quarters of a mile before it reaches a point of outlet above the dam. In ordinary stages of water, part of this waste passes over the dam, and part through appellee's mill-race, and in dry times practically all of it passes through the race for a distance of about three-quarters of a mile to the mill, and thence into the river, thirty rods below.

2. It is earnestly contended by counsel for appellants that there is not a word of evidence in support of the allegation that the refuse matter from the strawboard works was discharged into the river, and hence there is a total failure of proof upon a material fact charged. There is no dispute as to the manner in which the refuse matter from the factory is disposed of, and, while there is no allegation that it was discharged directly into the river, yet it is averred that appellants "have discharged and are continuing to discharge * * * large quantities of waste water and waste refuse, straw, lime and other substances," etc., into the river. The complaint might have been made more specific, if it had been required, as to the exact manner in which the stream was polluted; but if the evidence shows that it was polluted by the refuse matter from appellants' factory, after reaching the river, in the manner described, we are unable to see why there is a failure of proof on that point. If the water was thus polluted, it can make no difference whether the refuse matter was discharged directly into the river, or reached the river through the open ditch, the flume, the reservoir, the bayou and the race, as disclosed by the evidence.

3. Counsel in their brief have given a resume of the evidence, and after a careful examination of it, as stated by them, and also after examining and considering much of the original evidence in detail, and there being evidence supportive of the decree, and the evidence being in conflict, and declining, as we must, to weigh it, we are unable to say "that the judgment appealed from is not fairly supported

by, or is clearly against, the weight of the evidence." It is only when this condition makes itself manifest to an appellate court, by the record, that it is authorized by the statute, to "award judgment according to the clear weight of the evidence * * * or return said cause to the trial court with instructions to modify the judgment or to grant a new trial; or to enter such other judgment or decree as to such court of appeal may seem right or proper upon the whole case." Acts 1903, *supra.*

Upon consideration of the evidence, under our view of the statute, we can not see our way clear to disturb the conclusion reached by the trial court.

Judgment affirmed.


## On Petition for Rehearing.

Wiley, C. J.—Appellants have filed a petition for rehearing for the following reason, to wit: "The court erred in holding that the finding and judgment of the trial court is fairly supported by the weight of the evidence."

4. In the original opinion we declined to weigh the evidence, although requested to do so under the act of 1903 (Acts 1903, p. 338) therein cited. The basis of appellants' argument on the petition for rehearing is fully and frankly stated as follows: "But in cases like this, where the testimony of one or two interested witnesses is positively disputed by that of twelve or fifteen disinterested witnesses, and it is therefore clearly apparent that on such point the weight of the evidence is against the finding of the court, we insist that the Appellate Court, acting under the statute referred to, should not hesitate to award judgment 'according to the clear weight of the evidence.'" As stated in the original opinion, appellee by his complaint sought equitable relief to enjoin appellants from emptying into Blue river refuse matter from the said strawboard works, by reason of which the waters of that stream were polluted and made

noxious, to his damage, etc. He bases his right to recover damages, growing out of foul and noxious odors arising from the waters that had been polluted by the refuse matter, for the destruction of fish in the river, for material interference with the operation of the mill which he owned, for decrease in the rental value of his lands, and for polluting the water, so that it was unfit for stock to use, etc.

It will be observed that several elements of damages were to be considered by the trial court, and evidence was introduced as to all of them. From the first part of the statement quoted from appellants' brief, it will be observed that it is admitted that upon a material point there was some evidence in support thereof. To illustrate: There was some evidence that the odors arising from the river were carried to appellee's house, where he lived, which was situated some distance from the river, to the discomfort of some of the residents there. True, there was other evidence which went to the fact that no such odors were noticeable; or, to state it differently, one or two witnesses testified that they did not notice any such odors. Again, there is evidence to show that the waters from the river passing in and through appellee's mill-race, materially interfered with the operation of the mill. A number of witnesses testified that the water in the river and in the mill-race was at times very bad. It is shown that the water, even after passing through the reservoir into the river and mill-race, was discolored when it left the reservoir. It is in evidence, without contradiction, that the appellant company used about thirty tons of straw per day, from which it obtained about twenty tons of paper, thus showing that the waste or extractive matter that passed into the stream was about eight tons per day.

Dr. Hurty, an expert, testified that the water in the river would be impure or polluted so long as it was discolored, and there is an abundance of evidence to show that the water was discolored. Dr. Hurty also testified that the effect of

dumping such refuse in the river would be to pollute the stream and produce an unsanitary condition. He also testified that such refuse matters must undergo three changes, to wit, fermentation, putrefaction and decomposition. It is further shown by the evidence that in times of freshet or during high waters the volume of the water would be so great as to carry off the refuse matter from the mill without any serious detriment, while in low water, when the stream was sluggish, the deleterious effects would become more apparent. We can not tell from the record upon what element or elements of damages alleged in the complaint the trial court arrived at its conclusion, but it is clear that there is some evidence in the record to support appellee's right to recover damages under some of the allegations of his complaint, and the trial court evidently considered the evidence sufficient to support its finding.

Since the decision in this case was rendered the Supreme Court and also this court have had under consideration the very question here presented. In the recent case of *Hudelson* v. *Hudelson* (1905), 164 Ind. 694, the court, after a lengthy quotation from the case of *Ft. Wayne, etc., R. Co.* v. *Husselman* (1878), 65 Ind. 73, said: "This court, in harmony with the decision just quoted, uniformly and consistently refused to weigh conflicting evidence up to the time of the enactment of the statute of 1903 [Acts 1903, p. 338]. That act has recently been construed by this court in the case of *Parkison* v. *Thompson* [1905], 164 Ind. 609. In that case the court said: 'The statute must be given a reasonable construction, and no such interpretation should be placed thereon as will make the action of the legislature in enacting it appear absurd. * * * But certainly the legislature in passing the act did not intend that there should be a trial *de novo* in this or the Appellate Court upon the evidence in the case. It was not contemplated that we should take up and examine parol or oral evidence incorporated into a bill of exceptions, and pass upon its weight, without

any consideration or reference to the decision of the trial court, or the means afforded that tribunal for deciding questions of fact. Under our Constitution the legislature can not invest this court, in a cause appealed to it, with both appellate and original jurisdiction.'" Continuing in the case of *Hudelson* v. *Hudelson, supra,* the court said: "The fundamental and primary powers and duties of this court are those of a court of errors or appeals. Its functions as an appellate tribunal are essentially different from those of a trial court; and it is not within the province of the legislature to impose upon this court, in cases over which it acquires jurisdiction by appeal, powers and duties which rightly pertain to a trial court. Elliott, App. Proc., §27. If we were to attempt to perform the task which appellants' counsel ask us to undertake in pursuance of the provisions of the act of 1903, we would in reality perform the identical duty which the trial court discharged in passing upon the motion for a new trial. We can not weigh and determine the preponderance of conflicting oral evidence, for oftenstated and obvious reasons; nor can we be lawfully required to attempt to do so in cases before us for review on appeal. When, as in this case, the trial court has overruled a motion for a new trial involving the sufficiency of the evidence to sustain the decision upon the merits, and that ruling is assigned as error on appeal, this court is required to examine the evidence in the record. But the decision of the trial court upon the motion for a new trial will be disturbed only when the evidence upon the controlling issue is documentary, by deposition, or otherwise of such a clear and conclusive character as to enable and warrant this court to say, as a matter of law, that such decision is erroneous." See, also, *Hoosier Construction Co.* v. *National Bank, etc.* (1905), 35 Ind. App. 270.

Under these authorities, we can not consider and weigh the evidence where there is conflict, and the petition for rehearing is therefore overruled.