## Penn American Plate Glass Company *v.* Schwinn.

[No. 21,972. Filed May 28, 1912.]

1. APPEAL.—*Harmless Error.—Demurrer.—Repetition of Answers.*—It is not error to sustain a demurrer to a paragraph of answer which amounts to a repetition of an answer already in. p. 656.

2. ESTOPPEL.—*Pollution of Stream.—Actions.—Defenses.*—In an action against a manufacturing company for damages caused by discharging into a stream large quantities of water, sand and other substances which rendered the water unfit for use and caused the stream to overflow plaintiff's land, thereby rendering it unfit for cultivation, answers in estoppel on the ground that plaintiff knew the manner in which the factory was to be operated and that without objection he stood by and permitted the company, during a period of years, to expend large sums of money in perfecting its plant, are insufficient, since the effect on the stream produced by the operation of the plant was known to the defendant equally as well as to the plaintiff, and where the knowledge or means of knowledge are equal in each party there can be no estoppel. p. 656.

3. INJUNCTION.—*Laches.—Application of Doctrine.*—There is a marked distinction between the laches which would prevent injunctive relief against a long continued condition accompanied by large expenditures of money, which might have been obtained in the early stages, and damages for the injuries arising from the conditions. p. 656.

4. WATERS AND WATERCOURSES.—*Pollution.—Actions.—Defenses.*—In an action against a manufacturing company for damages caused by discharging large quantities of water, sand and other substances into a stream, thereby rendering the water unfit for use and causing the stream to overflow the plaintiff's land, the fact that the acts of the defendant were necessary in the conduct of its business is no defense. pp. 657, 658.

5. WATERS AND WATERCOURSES.—*Diversion of Stream.—Rights of Upper Proprietor.—Reasonable Use.*—Temporary diversion or detention of the waters of a stream by an upper proprietor to ordinary or reasonable use, or a use consistent with the character of the stream itself, even though it inconveniences or injures another, is a very different thing from obstructing a stream to the extent of filling it up by foreign importations, or rendering its waters unfit for the use of lower proprietors, and what is an

ordinary or reasonable use is a question of fact, and it is incumbent on him, who claims an unreasonable use, to make it appear. p. 657.

From Madison Circuit Court; *Charles K. Bagot,* Judge.

Action by Noah Schwinn against the Penn American Plate Glass Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1908, Acts 1901 p. 590.)   *Affirmed.*

*John W. Lovett* and *G. B. Slaymaker,* for appellant.
*James A. May,* for appellee.

MYERS, J.—Action by appellee against appellant, by a complaint in three paragraphs, for damages as for a nuisance.   Appellant answered by eight paragraphs, the first a general denial.   Demurrers were sustained to the second, third, fourth and eighth paragraphs of answer, which rulings are the errors here assigned. The further assignment, that the court erred in refusing to stay the cause until the costs in a former action between the parties were paid, is waived.   On a reply of general denial, a trial was had, and a small amount assessed as damages.

The first paragraph of the complaint alleges that appellant, for more than six years prior to the bringing of the action, was a corporation, owning and operating a large factory, for the manufacture of plate glass, at the city of Alexandria, Indiana; that in its business appellant used large quantities of water, sand and other materials procured from appellant's premises, or at places many miles distant from a stream known as Pipe creek; that the factory of appellant is located on the north bank of Pipe creek, a small nonnavigable, natural watercourse, with a constant flowing or living stream flowing between banks in a well-defined channel; that during the past six years appellant deposited many thousand tons of finely powdered sand into the channel of the creek, in such quantities that the channel of the stream was filled

up and narrowed, and that the water of the stream, because of such deposits, carried the sand and other materials out upon the lands of appellee, lying about four miles southwest of appellant's factory; that appellee owned eighty acres of farm and pasture lands, which, before the acts of appellant complained of, were good for agricultural and grazing purposes, but that the acts of appellant had rendered about ten acres of the land unfit for agricultural and grazing purposes, and had rendered the water of the stream unfit for the drink of either man or animal; that before appellant made such use of the creek appellee's lands were valuable for the purpose aforesaid, and the water also fit for the drink of man and animal; that appellant's acts also caused the waters of the creek frequently to overflow appellee's lands; that appellee's crop damage amounted to $500; that about six acres of timber lands were damaged; that appellant's acts made it impossible for appellee's stock to get into the stream to drink, and made it impossible for them to cross the stream; that appellant's acts further produced foul and disagreeable odors on appellee's real estate near his dwelling-house, near the creek; that the annual rental value of the premises during the last six years has been and is now $200, and that before appellant's acts, and without appellant's acts in the premises, the rental value of appellee's real estate would have been $500 a year. It is further alleged that appellee's real estate was practically ruined, and he demanded damages in the sum of $2,000.

The second and third paragraphs allege that the materials which appellant deposited in the stream were brought into appellant's factory from points many miles distant, and also that appellant's acts were done negligently, carelessly and wrongfully. Except in these particulars, the three paragraphs are identical.

The second paragraph of answer avers that appellant owns the land on both sides of Pipe creek, both above and below, and operates a large factory for the manufacture of plate

glass in the west part of the city of Alexandria, Indiana, and on the north bank of a small stream known as "Pipe creek," and has the rights of a riparian owner in the stream; that appellant and its predecessors have been in possession of the factory thereat for the manufacture of plate glass for more than seventeen years; that appellant had expended more than $1,000,000 in building and improving its plant, and employs, when running at its full capacity, more than 600 men, and pays in wages $350,000 annually; that one of the processes in the manufacture of plate glass at appellant's factory is the grinding of the glass, and that to do said work it is necessary for appellant to use three carloads of sand each day; that appellant takes from Pipe creek and redischarges into it, carrying the sand in solution, 3,000,000 gallons of water daily; that it is necessary that said sand be discharged into said waters, and carried, by means thereof, through an iron pipe into said Pipe creek; that there is no means known to appellant, and no device or mechanism invented or discovered, and no means whatsoever, by which all the sand necessarily placed in said water can be separated therefrom; that appellant has endeavored to detain the sand and other materials which it places in the water, by constructing channels, basins and drains in the creek at the location of the factory, which do detain the major portion of the sand and materials which appellant deposits in the water; that there is no basin or other stream or outlet into or through which the water containing sand can be deposited, nor can appellant create artificial basins, channels or reservoirs so as to detain more of the sand and other materials which it discharges into the creek; that appellant has done every thing that it can do to prevent the flowage into Pipe creek of the sand and other materials that escape from the plant into the stream; that Pipe creek is a stream from six to thirty-six inches deep, and from ten to fifty feet wide, and is the natural and sole means of drainage from appellant's factory and lands and the basin thereabout, as well as from the city of Alexandria, a large

manufacturing center, and the city, other factories and the community thereabout, all use Pipe creek as a natural means of drainage; that Pipe creek above appellant's factory flows through a sandy country, devoid of timber, and is peculiarly susceptible to rise and overflow, and bears down with it, to and past appellant's factory, large quantities of sand, which have come therein by natural and erosive processes; that when said stream is at its usual and normal stage, it carries down from appellant's factory the sand which appellant deposits in it, and leaves but a small deposit on the bed and banks of the creek.

It is further averred that appellee's lands are low lying, and susceptible to overflow, and are overflowed by Pipe creek many times during every year, and that the sand, which by natural processes has been carried by the waters of the creek, and not from appellant's factory, is carried over, and deposited on appellee's lands; that appellee's lands are depressed, and constitute a swale through which flood waters from Pipe creek flow; that appellee, by expending not to exceed $25, could construct a barrier on his lands which would divert the water from his lands, and cause it to remain in the channel.

Appellant further alleges that it uses no harmful, poisonous, noxious or malodorous materials at its factory that are discharged into the creek, and that, after the stream leaves appellant's factory, the water is wholesome and fit for the drink of both man and animal; that any harmful materials are neutralized absolutely at appellant's factory, and long before they could be carried to appellee's lands; that appellant cannot operate its factory without discharging into said creek the quantities of water, sand and other materials which it now discharges therein, which are carried by the waters in invisible solution; that plate glass is a necessity of commerce; that it is not possible or practicable for appellant as its plant is now constructed, or as it might be constructed on its lands, or as it might be constructed elsewhere on said stream, nor is it possible or practicable to construct a plate

glass factory of the kind and character of appellant's factory
so as to operate it in any manner other than as it is now
operated, and that appellant operates its factory in every
respect as such factories are usually operated, and exercises
every care and diligence possible in the conduct of its plant,
and that it is necessary and indispensable to the operation
of the factory that it make such discharge into Pipe creek,
and it cannot so construct its factory on its lands or else-
where on said stream without discharging such materials into
said stream; that it is not possible or practicable to carry on
the industry of plate glass manufacture elsewhere than upon
a flowing stream, nor otherwise than by discharging therein
the quantities of sand and other materials which appellant
discharges into the same; that appellant operates its plant in
every respect as well-regulated and properly-conducted
plants of its nature are everywhere conducted, and through-
out the United States it is necessary for plate glass manu-
factories to locate, and they are located, and it is the custom
of such industries to locate, on the banks of flowing streams,
and to discharge therein sand and such other materials as
appellant discharges into Pipe creek, and has discharged into
the same for many years last past; that appellant and its
predecessors have operated said plant for more than seven-
teen years in the manner in which the plant is now operated,
without objection or notice from appellee or any one else
that the operation of its plant in such manner, and the dis-
charge into said stream, in any way polluted it, or in any
way injured appellee's lands; that appellant has continued to
invest large sums in its plant, and in the last ten years has
made an average investment and expenditure, in improving
the plant, of $100,000 a year, in doing which it relied on the
fact that the use it was making of said creek did not in any
way pollute the stream, or in any way damage appellee, of
all of which facts appellee for many years had full knowl-
edge; that appellant operates, and has always operated, its
plant in a careful and prudent manner, and can provide no

other means or ways for the discharge of the sand and other materials than into the water which it discharges into the creek and into said stream; and that appellant's use of said stream is in every respect reasonable, and only such as the necessities of the business require.

The third paragraph is identical with the second, except that it contains the averment "that this defendant has constructed its plant in a proper and careful manner, and it does not, nor has it ever, negligently, wilfully, wantonly or maliciously deposited any materials whatsoever into said Pipe creek, but uses the said stream carefully and so far and in such manner as its business requires; that said factory is well adapted for use along said stream, and said stream is well adapted to manufacturing purposes, and to the purpose of this defendant in the operation of its plant," and "that during all the time of the occurrence of the things complained of, plaintiff had full knowledge of the effect of the operation of this defendant's said factory in said manner had, and would have, on said Pipe creek and on plaintiff's lands, and plaintiff had full notice and knowledge that defendant was further extending, enlarging and increasing its investment in its plant and factory, but that plaintiff, with full knowledge and notice as aforesaid, and knowing that defendant would continue to operate its said factory unchanged, and knowing that defendant had no notice or knowledge of the effect of its use of said stream on plaintiff's lands, made no complaint to defendant, and gave it no notice or information whatever that its said acts in the operation of said factory in any way injured or damaged plaintiff, but stood by, with full knowledge of the premises, and permitted defendant to make the aforesaid investments and expenditures."

The fourth paragraph of answer alleges that appellant is a corporation; that in the year 1891 the DePauw Glass Company, a corporation, acquired title to the real estate now owned by appellant as its factory site at Alexandria, to-

gether with the right to use Pipe creek as a riparian owner; that at said time it was well known by one of the defendants, Peter Schwinn, father of appellee, and it was a matter of public notoriety, that it was the purpose and intent of said DePauw Glass Company to construct on said lands and to operate a large plant for the manufacture of plate glass, and that the company intended to and would use Pipe creek for the drainage of said factory, and would use large quantities of the waters of said creek in the manufacture of plate glass, and that it would mix with said water, sand and other material used by it in the grinding and polishing of said plate glass, and that after it had used said water, the same would be cast into Pipe creek by means of drains and conduits, to be carried with the flow of the stream, and that in time of high water and freshet the waters from said stream, burdened with said sand and other material, did overflow the low lands lying along and adjacent to said stream; that said Peter Schwinn, then the owner of said real estate, well knew the facts aforesaid, but made no objection or complaint and gave no notice whatever to the DePauw Plate Glass Company not to construct said factory, or that it would be held for damages, in case it did so, or in case it used said stream for its factory drainage, for any injury that Peter Schwinn might sustain thereby; that in 1891, the DePauw Plate Glass Company erected its plate glass factory at the site of appellant's factory, and installed therein much valuable machinery, and constructed its plant for the taking of water from Pipe creek for use in said factory, and especially for the purpose of mixing sand therewith, and using the waters for grinding and polishing plate glass, and in that year began making plate glass in said plant; that the DePauw Plate Glass Company expended $500,000 for its plant; all of which facts were well known to Peter Schwinn, then the owner of said land; that the DePauw Plate Glass Company continued to operate said plant until it was acquired by the American Plate Glass Company; that the latter, from the time it ac-

quired the plant, continued to operate it, employing a large
number of workmen, and expending large sums of money in
increasing the plant, without any objection from Peter
Schwinn to the use it was making of Pipe creek, and without
any notice that it would be held to any claim or liability by
reason of such use; that it continued to operate said factory
and said plant and to use the waters of Pipe creek for grind-
ing and polishing plate glass until December —, 1900, when
appellant purchased the plant from the American Plate Glass
Company; that at the time appellant purchased the plant
said Peter Schwinn was still the owner of said land, and did
not at any time make any objection to appellant about the
use it was making of said stream, and appellant had no notice
or knowledge that he had any cause of complaint about said
drainage, or that the use by appellant's factory of said
stream for drainage in any way damaged his lands or the
waters of said creek; that appellant relied on the fact that
its operation of said factory and the use of said creek for
drainage, which had continued then for more than ten years,
had not, to the knowledge of appellant, injured Schwinn, and
relied further on the fact that no complaint had been made
by Schwinn or anyone else, and, relying on such facts, ap-
pellant believed there was no objection by any proprietor
along said stream to the use thereof which appellant was
making, and relying on said fact, did purchase and acquire
said factory site; that since acquiring said plant, appellant
has continued to operate it and has employed and is now
employing 600 workmen at said plant, and has paid out large
sums of money in wages to its employes; that many of said
employes, relying on the stability of said plant and its con-
tinuous operation, have purchased their homes in the city of
Alexandria, Indiana; that appellant cannot operate its fac-
tory without using Pipe creek for its drainage, or taking
water therefrom for use in grinding and polishing its plate
glass, and it must use and mix therewith large quantities of
sand, and after using the same deposit it in Pipe creek, to be

carried away; that appellant in its polishing processes employs, and discharges into said creek, ninety-nine per cent of sand, and one per cent of plaster of Paris; that such ingredients do not cause the water to become foul, malodorous or offensive, nor do they render the water unwholesome or deleterious for the use of stock or of persons desiring to use it, nor is there anything put into the stream by appellant which in any way causes vegetation growing on the lands adjoining the stream to become unpalatable or unfit for the use of stock, and nothing is cast by appellant into the stream that is unwholesome, harmful, offensive, noisome or injurious either to man or beast, or to the health or comfort of either man or beast, nor anything that would cause any stench or malodor in or about appellee's residence or lands, and nothing that would produce or tend to produce a nuisance; that appellant's drainage system was established more than ten years ago in manner and form as it now exists, and during all such time has been continuously used in the same manner, all of which was known by Peter Schwinn and appellee, Noah Schwinn; that at the time appellee acquired his interest in said land, and for more than six years prior to the commencement of this suit, the condition as to said drainage had remained the same, and appellee knew at the time he acquired an interest in said property, and the title thereto, that appellant was using said stream for its drainage, and would so continue to use it, and with full notice and knowledge of such facts acquired title to or an interest in said estate.

It is further averred that while Peter Schwinn was the owner of said land, and long before appellee acquired any interest, Peter Schwinn recognized the right of appellant to use said stream for its drainage, and that the operation of said factory was largely beneficial to him and to the citizens of Madison county, Indiana, and Peter Schwinn leased and granted to this appellant, in consideration of the payment to him of a large sum of money, the right to drill gas wells

on said real estate, and induced this appellant to expend large sums of money in putting in gas wells, mains and pipes to take gas from said lands. Wherefore, appellee is estopped, etc.

Appellant's fifth, sixth and seventh paragraphs were answers of the six-year statute of limitations to the first, second and third paragraphs of complaint respectively.

The eighth paragraph alleges the corporate existence of appellant, the location of its plant, and the ownership thereof by its predecessors to the time when it was acquired by appellant, in December, 1900; that during all of said time Pipe creek was the natural and only source of drainage for the plant; that in its operation it is necessary to use large quantities of water in grinding and polishing glass; that the water is mixed with large quantities of sand and a small quantity of plaster of Paris, and is used in polishing and grinding glass; that in the year 1891 the DePauw Plate Glass Company, being then the owner of said factory, caused to be constructed an intake pipe and conduit from said Pipe creek to said factory, for the purpose of drawing the water from the creek into the factory, to be mixed with sand and plaster of Paris, and to be used in grinding and polishing glass, and also constructed a discharge pipe, returning the water into Pipe creek with the sand and plaster of Paris in solution, and in 1891, commenced using said waters, and discharging the same, mixed with sand and plaster of Paris, by means of the drain into said stream; that said intake pipe and drains and said system of drainage were maintained by the DePauw Plate Glass Company until it sold its plant and factory to the American Plate Glass Company, and the latter used said system in the same manner, until it sold the plant to appellant; that ever since appellant has owned and operated the plant, it has used Pipe creek in exactly the same way as its predecessors have used it; that for more than six years prior to the commencement of this action appellant kept and maintained said intake pipe and system of drain-

age, without making any changes or additions therein, and alleges that if appellee has been damaged, as alleged in his complaint, his cause of action accrued more than six years prior to the commencement of this action; that Peter Schwinn acquired title to said real estate in 1896 and 1897, and that appellee acquired title thereto in 1896.

The evidence is not brought up, and the sole questions arise on the rulings on the demurrers to these answers. As to the eighth paragraph, it is a plea of the six-year statute of limitations, and as that answer was in, there was no error in that ruling.

It is claimed that the second, third, and fourth paragraphs are pleas of estoppel.

It is apparent that appellant and its predecessors knew from the very nature of things at all times the effect on the stream produced by the operation of the plant, as much as, and equally with appellee, and the proposition is elementary, that where the knowledge or means of knowledge are equal in each party, there can be no estoppel. *Frank* v. *City of Decatur* (1910), 174 Ind. 388, 92 N. E. 173; *Russell* v. *State, ex rel.* (1909), 171 Ind. 623, 87 N. E. 13; *Knight, etc., Ins. Order* v. *Shoaf* (1906), 166 Ind. 367, 77 N. E. 738; *Ross* v. *Banta* (1895), 140 Ind. 120, 34 N. E. 865, 39 N. E. 732; *Wolfe* v. *Town of Sullivan* (1893), 133 Ind. 331, 32 N. E. 1017; *Fuelling* v. *Fuesse* (1909), 43 Ind. App. 441, 87 N. E. 700.

There is a very marked distinction between the laches which would prevent injunctive relief against a long continued condition accompanied by large expenditures of money, which might have been obtained in the early stages, and damages for injuries arising from the conditions, which latter is the question here presented. The distinction is well stated in *City of Logansport* v. *Uhl* (1895), 99 Ind. 531, 50 Am. Rep. 109.

The theory of these answers, however, as disclosed by the points made and authorities cited, is that appellant of right

and of necessity is entitled to do the things disclosed
4. by the answer, without being amenable to damages, at
least in the particulars claimed, and that was the real
defense. The difficulty with appellant's position is, that it
fails to note the distinction between obstructing a natural
stream, and befouling its waters, which is the case made by
the complaint, and the detention and temporary diversion to
ordinary use, which is the case presented by the cases cited
by appellant, with the exception of *Pennsylvania Coal Co.* v.
*Sanderson* (1886), 113 Pa. St. 126, 6 Atl. 453, 57 Am. Rep.
445, which we pointed out in *Niagara Oil Co.* v. *Ogle* (1912),
*ante,* 292, 98 N. E. 60, is out of line with the great weight of
authority, and has been since greatly limited by the supreme
court of Pennsylvania.

Temporary diversion or detention of the waters of a stream
by an upper proprietor to ordinary or reasonable use, or a
use consistent with the character of the stream itself,
5. even though it inconveniences or injures another, is a
very different thing from obstructing a stream to the
extent of filling it up by foreign importations, or rendering
its waters unfit for the use of lower proprietors, and the dis-
tinction is followed in the cases with more or less clearness,
and what is an ordinary or reasonable use is a question of
fact, and it is incumbent on him who claims an unreasonable
use to make it appear. *State* v. *Pottmeyer* (1870), 33 Ind.
402, 5 Am. Rep. 224; *Muncie Pulp Co.* v. *Koontz* (1904), 33
Ind. App. 532, 70 N. E. 999; *Red River Roller Mills* v.
*Wright* (1883), 30 Minn. 249, 15 N. W. 167, 44 Am. Rep.
194; *Ulbricht* v. *Eufaula Water Co.* (1888), 86 Ala. 587, 6
South. 78, 11 Am. St. 72, 4 L. R. A. 572 and notes; *Bullard*
v. *Saratoga, etc., Mfg. Co.* (1879), 77 N. Y. 525; *Hoxsie* v.
*Hoxsie* (1878), 38 Mich. 77.

There is perhaps one line of distinction which, in the
opinion of the writer of this opinion, is unsound, and that is
an exception in favor of cities making avail of streams for

sewerage without liability. That doctrine grew up
4. from a supposed necessity, but the same reasons which
seemed to be grounds for the exception to the rule in
regard to pollution of streams by cities are the very ones
which must sooner or later reverse it.

It is a matter of common knowledge everywhere, and the
subject of recent legislation in this State, that the streams
of pure and limpid water, which formerly traversed the
State, have become cesspools of filth and breeders of disease,
and are polluted to nausea, and we must certainly, and the
sooner the better for the State and its inhabitants, take steps
necessary to the removal of sewage from our streams, and
their restoration to their natural condition, and certainly
such exception as now applies to cities should never extend
to manufacturing or commercial enterprises, if it be retained
as to the cities. Two marked cases of the excepted class are
*City of Valparaiso* v. *Hagen* (1899), 153 Ind. 337, 54 N. E.
1062, 48 L. R. A. 707, 74 Am. St. 305, and the cases on
which it is based, recognized in *Weston Paper Co.* v. *Pope*
(1900), 155 Ind. 394, 400, 51 N. E. 719, 56 L. R. A. 899, and
in *City of Richmond* v. *Test* (1897), 18 Ind. App. 482, 48 N.
E. 610, both of which, in the opinion of the writer, are based
on unsound premises. They are grounded on the supposed
necessity of the rule, following the case of *Pennsylvania Coal
Co.* v. *Sanderson, supra,* and *Barnard* v. *Sherley* (1893), 135
Ind. 547, 34 N. E. 600, 35 N. E. 117, 24 L. R. A. 568, 41 Am.
St. 454.

The rule of necessity thus declared must in and of itself
inevitably force just the opposite doctrine, in the interest of
the public health, the very thing supposed to be subserved by
the rule, when it is daily becoming more and more apparent
that the sewage in the streams is a real menace to the public
health, and it is not a necessity, because it can be otherwise
provided for, with practicability and assured safety to the
public health.

Far preferable and more consistent, both with private rights and the public interest, that the streams shall be preserved without contamination, and as arteries adequate to carrying the floods of water, continually increasing in quantity and velocity by reason of the agricultural drainage, precipitating them quickly into streams, and that no supposed rule of necessity in order to the carrying on of a business, on account of its usefulness or necessity, or that it cannot be carried on without producing these results, nor the fact of skill and care to prevent it, or on account of the amount involved, can be allowed as an exception, nor can the riparian owner below be required to protect himself; the right is an incident of the title, and such is the law of this State. *Niagara Oil Co.* v. *Ogle, supra; Muncie Pulp Co.* v. *Keesling* (1906), 166 Ind. 479, 76 N. E. 1002, 9 Ann. Cas. 530; *West Muncie Strawboard Co.* v. *Slack* (1904), 164 Ind. 21, 72 N. E. 879; *Muncie Pulp Co.* v. *Martin* (1904), 164 Ind. 30, 72 N. E. 882; *Weston Paper Co.* v. *Pope, supra; United States, etc., Paper Co.* v. *Moore* (1905), 35 Ind. App. 684, 72 N. E. 487, 74 N. E. 1094; *American Plate Glass Co.* v. *Nicoson* (1905), 34 Ind. App. 643, 73 N. E. 625; *Muncie Pulp Co.* v. *Koontz, supra; Muncie Pulp Co.* v. *Martin* (1899), 23 Ind. App. 558, 55 N. E. 796; *Valparaiso City Water Co.* v. *Dickover* (1897), 17 Ind. App. 233, 46 N. E. 591; *Strobel* v. *Kerr Salt Co.* (1900), 164 N. Y. 303, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. 643.

It may be a serious question whether these answers are not argumentative general denials, but in any event, they present no defense to the cause of action, as is disclosed by the line of authorities last above cited.

There is no error in the record, and the judgment is affirmed.

NOTE.—Reported in 98 N. E. 715. See, also, under (1) 31 Cyc. 358; (2) 16 Cyc. 741; 22 L. R. A. (N. S.) 276; 38 L. R. A. (N. S.) 272; (3) 22 Cyc. 777; (4) 40 Cyc. 599; (5) 40 Cyc. 604. As to estoppel by silence or failure to assert one's rights, see 10 Am. St.

22, note to *Cook* v. *Walling*, 117 Ind. 9. As to the duty and liability of land-owners to adjoining proprietors, see 123 Am. St. 565. As to the municipal liability for damages caused by the use of a stream for sewerage purposes, see Ann. Cas. 1912B 450.