## BARNES ET AL. *v.* STOCK.

[No. 8,285. Filed December 17, 1912.]

1. APPEAL.—*Review.—Evidence.—Weight.*—Where there was much verbal testimony interwoven with documentary evidence and which bore directly on the vital questions in issue, the court on appeal is not required to weigh the evidence within the meaning of §698 Burns 1908, Acts 1903 p. 338, §8, providing that in a cause not triable by jury the judgment of the trial court shall be reversed if it is not supported by, or is clearly against, the weight of the evidence, and the judgment, if supported by some evidence, will be affirmed, although the cause was one not triable by jury. p. 642.

From Vanderburgh Circuit Court; *C. A. DeBruler*, Judge.

Action by Christian J. Stock against William E. Barnes and another. From a judgment for plaintiff, the defendants appeal. *Affirmed.*

*E. L. Richardson* and *George A. Cunningham*, for appellants.

*William Reister*, for appellee.

Felt, J.—This suit was brought by appellee, Christian J. Stock, against appellants, William E. Barnes, sheriff, and the City National Bank, of Evansville, Indiana, to restrain the sale of certain real estate alleged to be the property of appellee, which had been levied on and advertised for sale to satisfy a judgment in favor of said bank and against Henry C. Stock.

The allegations of the complaint material to the questions presented by the assignment of errors, in substance, show that on October 19, 1908, said bank obtained judgment against Henry C. Stock; that on February 15, 1904, appellee conveyed to said Henry C. Stock the undivided one-half interest in 189 acres of real estate in Vanderburgh county, Indiana; that on the same day a written defeasance was executed as follows:

"This is to certify that Christ Stock and Henry C. Stock agree as is stated in this agreement below. Christ J. Stock wanting to buy all of the home place, but not having enough money to buy the farm and pay for the same, and the rest of the children wanting the farm sold and wanting their money, Henry C. Stock having the money belonging to the estate, as administrator and guardian, agrees to let Christ J. Stock have Forty-two hundred and fifty dollars ($4,250.00) the amount that Christ needs to buy the farm, Henry C. Stock agrees to let Christ J. Stock have the money and Christ J. Stock agrees to give a deed to half of the farm, which is described this way in the deed: * * * Henry C. Stock and Christ J. Stock agree too that when Christ

J. Stock pays the money back before Louis M. Stock is twenty-four years old to Henry C. Stock, that Henry Stock must give Christ J. Stock a deed back so that Christ will have the whole farm when he pays all the money back to Henry C. Stock. We agree that for interest on the money that Christ J. Stock must pay Henry C. Stock $300 a year rent and out of the rent Christ is to keep up the buildings and fences as needed. This agreement is made on the same day the deed is made by Christ J. Stock and his wife to Henry C. Stock, which is the 15th day of February, 1904, and signed by us both.

> [Signed]    Henry C. Stock.
>                   Christ J. Stock.''

It is further averred that at the same time appellee gave to said Henry C. Stock his note for $4,250; that said deed was given as a security therefor, and said real estate was to be reconveyed on payment of said note; that said note was paid in full, and on November 28, 1908, said Henry C. Stock and wife reconveyed said real estate to appellee; that by reason of said facts said judgment is not a lien on said real estate; that the levy of the execution thereon is unlawful, and casts a cloud on appellee's title. Prayer that appellant Barnes be enjoined from proceeding with the proposed sale. The court found for appellee, and rendered judgment enjoining the sale. A motion for a new trial was overruled, this appeal granted, and the error assigned questions the correctness of that ruling.

Appellants concede that there is some evidence to support the judgment of the lower court, but contend that the suit is a proceeding in equity, and that this court

1. should, under §698 Burns 1908, Acts 1903 p. 338, §8, weigh the evidence and decide the case according to the ''clear weight of the evidence,'' and reverse the judgment of the lower court if it ''is not fairly supported by, or is clearly against, the weight of evidence.'' This section of the statute has been so fully construed by our Supreme Court and by this court, and its application is so well defined, that further discussion as to its meaning

and application is unnecessary. *Parkison* v. *Thompson* (1905), 164 Ind. 609, 618, 73 N. E. 109, 3 Ann. Cas. 677; *Hudelson* v. *Hudelson* (1905), 164 Ind. 694, 74 N. E. 504; *United States, etc., Paper Co.* v. *Moore* (1905), 35 Ind. App. 684, 690, 72 N. E. 487, 74 N. E. 1094; *Unger* v. *Mellinger* (1906), 37 Ind. App. 639, 643, 77 N. E. 814, 117 Am. St. 348; *Ray* v. *Baker* (1905), 165 Ind. 74, 91, 74 N. E. 619; *Over* v. *Dehne* (1906), 38 Ind. App. 427, 435, 75 N. E. 664, 76 N. E. 883; *Keesling* v. *Keesling* (1908), 42 Ind. App. 361, 363, 85 N. E. 837; *Albaugh Bros., etc., Co.* v. *Lynas* (1911), 47 Ind. App. 30, 93 N. E. 678.

In this case the vital question turns on the effect of the deed made by appellee to Henry C. Stock in 1904. If the transaction between the parties at that time was a sale, and the grantee a purchaser, the title vested in him was absolute, and the judgment against Henry C. Stock became a lien on the interest held by him and conveyed to appellee after the rendition of the judgment. If said deed to Henry C. Stock was executed as a security for a loan, it was in law a mortgage, and on payment of the debt, the reconveyance of the property to appellee was the equivalent of the release of a mortgage, and such transfer only conveyed back to him the legal title to the land of which he was already the equitable owner. In that event the judgment was at no time a lien on the land, for Henry C. Stock held the title only as a security for a loan.

Appellants contend that the evidence is so far documentary that this court must, under the statute, weigh the evidence and render judgment according to the weight of the testimony. The conveyances, the defeasance, the will of Christian Stock, the deposition of Henry C. Stock, his testimony given on examination under oath in April, 1909, in his bankruptcy proceeding, appellee's application for a loan, and certain affidavits made in procuring a loan on the real estate in question, were documentary and a part of the testimony in the case, bearing with more or less di-

rectness on the questions in issue. The defense was largely an attack on the instrument of defeasance. The effort was to show, by certain provisions of the defeasance relating to interest and improvements, and by other circumstances, that it was not executed at the time of the transaction to which it appears to relate, and that Henry C. Stock held title as a purchaser and not as security for a loan. The execution of the defeasance was proven, and it is not questioned that it is sufficient in language and form to operate as a defeasance. It was shown that the instrument was written by the parties themselves, while the deed bearing the same date was drawn by a lawyer. This circumstance, the source of the money used in the transaction, the relation of the parties, and certain statements of appellee and Henry C. Stock were subjects of controversy.

There was verbal testimony tending to show that the money used in the transaction in 1904 between appellee and Henry C. Stock came by will from the father of appellee to his children; that Henry C. Stock was the administrator, with the will annexed of the estate of Christian Stock, deceased, and the guardian of some of his brothers and sisters, minor heirs of said decedent, who bequeathed to them considerable money in addition to the real estate; that by the terms of the will a child was not to receive his share of the estate until he arrived at the age of twenty-four years; that there was a family agreement that appellee should become the owner of the farm, and he had previously bought out some of the older heirs; that the money loaned him by Henry C. Stock was money of the estate; that one reason for taking a deed instead of a mortgage was to avoid double taxation; that appellee procured a loan on the real estate in December, 1908, paid off the note given to Henry C. Stock in 1904, and he in turn used the money in settlement with certain heirs of his father's estate. Appellee and six other witnesses gave verbal testimony. Appellee's testimony was, in substance,

to the effect that he was the owner of the land; that his brother loaned him money belonging to the estate, and they executed the defeasance at that time; that it was always the intention and arrangement for him to own the land. The testimony of the other witnesses consisted largely of statements made either by appellee or Henry C. Stock out of court, some of which corroborated the theory of a loan and some that of a purchase by Henry C. Stock.

The deposition of Henry C. Stock in the main corroborated appellee on the execution of the defeasance, the source of the money and the character of the transaction. Some of his testimony in this case and some parts of his examination in bankruptcy consisted of statements more or less inconsistent with other parts of his testimony and the theory of appellee. But he at all times held to the idea that the money used in the transaction of 1904 did not belong to him personally, but was trust funds, the property of the heirs of his father's estate, with whom he had not at that time made settlement.

Some of the apparently contradictory statements of appellee and Henry C. Stock may be explained by the fact that Henry C. Stock held a deed, and such statements relate to the form and not the legal effect of the instrument.

There is little, if any, dispute on the proposition that the money so used belonged to said minor heirs and not to Henry C. Stock personally, and that the money obtained by the loan in 1908 was actually used in settlement with them.

On such a record as this we cannot ignore the finding and judgment of the lower court. Much of the verbal testimony bore directly on the vital questions in issue. The opportunity of the trial court to judge the credibility of such witnesses and to ascertain the truth is unquestionably superior to that of this court. The verbal testimony is of such a character, and so interwoven with the documentary evidence, that it would be hazardous to attempt to separate

it and give a decision on the documentary evidence alone by conceding the verbal testimony its full probative value against appellants. We cannot on this record set our judgment of the weight of the testimony against that of the trial court and say it committed reversible error. In fact, we are not prepared to say that our examination of the whole evidence, even if we felt justified in weighing the testimony as it comes to us, would lead to a result different from that reached by the trial court. We are content to hold that on the record presented we are not called on to weigh the testimony, within the meaning of the statute invoked.

Judgment affirmed.

Note.—Reported in 100 N. E. 98. See, also, 3 Cyc. 360.