HACKSTACK, Respondent, vs. THE KESHENA IMPROVEMENT COMPANY, Appellant.

*August 31 — September 21, 1886.*

*Watercourses: Flooding dams: Charter construed: Flowage of land: Form of action: Damnum absque injuria.*

Ch. 352, P. & L. Laws of 1866, authorized the defendant company to improve the Wolf river between certain points, by deepening the channel, building dams, etc., so that logs might be run from one of said points to the other, and provided that the company should be "subject to the provisions of the mill dam law relative to damages on account of overflowing lands in making said improvements." By the dams constructed the waters of the river were accumulated in large ponds or reservoirs, and, being discharged into the river below in order to raise the same for the purpose of floating down logs, caused the river to overflow its banks and to injure the plaintiff's lands so that he was compelled to abandon them. Such lands were situated several miles below the lowest point at which the improvement was authorized. *Held:*

(1) The defendant had no right to flow in such manner any lands below the points specified.

(2) For such injury the plaintiff might pursue his remedy at common law.

(3) The injury was not *damnum absque injuria* as being incidental to and remotely consequential from a public improvement made by the state through the agency of the defendant. *Alexander v. Milwaukee,* 16 Wis. 247, distinguished.

APPEAL from the Circuit Court for *Outagamie* County. The case is stated in the opinion.

For the appellant there were briefs by *Jackson & Thompson,* and oral argument by *Mr. Jackson.* They contended *inter alia:* 1. The right to discharge the accumulated waters which carry the logs to the lower point named in the act, is a necessary incident of the powers granted. The charter must be reasonably construed. *Chesapeake & O. Canal Co. v. Key,* 3 Cranch C. C. 599; *Bridgeford v. Hall,* 18 La. Ann. 211. 2. The defendant is an agent of the state

to improve a public navigable river, and the incidental injury to the plaintiff resulting from the works of the agent, authorized by the charter, is merely *damnum absque injuria. Black R. Imp. Co. v. La Crosse B. & T. Co.* 54 Wis. 659–682; *Cohn v. Wausau Boom Co.* 47 id. 314; *Alexander v. Milwaukee,* 16 id. 247; *Squiers v. Neenah,* 24 id. 588; *Stevens Point Boom Co. v. Reilly,* 46 id. 237; *Harrison v. Sup'rs of Milwaukee Co.* 51 id. 664; *Transportation Co. v. Chicago,* 99 U. S. 635; *Hollister v. Union Co.* 9 Conn. 436; *Monongahela N. Co. v. Coons,* 6 Watts & S. 101; *Green v. Swift,* 47 Cal. 536; *Governor v. Meredith,* 4 Term, 796; *Smith v. Gould,* 59 Wis. 644; *Parker v. Cutler M. D. Co.* 20 Me. 353. 3. Even if there has been a taking of the plaintiff's land for public use, the defendant's charter provides that it shall be liable only under the mill dam law. *Wood v. Hustis,* 17 Wis. 416–419; *Babb v. Mackey,* 10 id. 371, 377. And even if the charter did not so provide, the plaintiff must pursue his statutory remedy. R. S. sec. 1777; Laws of 1882, ch. 318; *Hanlin v. C. & N. W. R. Co.* 61 Wis. 515, 523; *Smeaton v. Martin,* 57 id. 376; *Spangler's Appeal,* 64 Pa. St. 387; *Smith v. Gould,* 59 Wis. 645.

For the respondent there was a brief by *Collins & Blackwell,* attorneys, and *John Goodland,* of counsel, and oral argument by *Mr. Collins.*

ORTON, J. The material facts stated in the complaint are as follows: The defendant, as a corporation, for more than six years was the proprietor or manager of certain dams across the Wolf river and its tributaries at a point many miles above the land and farm of the plaintiff on said river, and by means of said dams the waters of said river and tributaries were caused to accumulate in large reservoirs and ponds. In the spring and early summer of each year the defendant caused the waters so retained to be discharged into the river below, for the purpose of raising the same for

the purpose of floating down the same logs, timber, and lumber, which raised the waters of said river to an unnatural and unusual height, and caused the same to flow the land and farm of the plaintiff, and to overflow the banks of the river at and near the same, which destroyed his crops and timber, and damaged his land so that it became thereby useless and worthless for farming purposes and occupancy, and the plaintiff was thereby compelled to abandon it for such purposes. These consequences would not have followed if the river had been allowed to flow in its natural and usual stage, unaffected by such occasional discharge of the waters of said river from said dams for the purpose of floating down the same logs, timber, and lumber. Damages are demanded for such injury.

The defendant demurred to the complaint for several reasons, but relies only on the main reason that the complaint does not state a cause of action against the defendant. The demurrer was overruled, and the defendant has appealed to this court from said order.

It will be observed that the defendant is charged as a corporation. In order, therefore, to determine its right or authority to so flow the land of the plaintiff, and its exemption from an action of this kind, it will be necessary to refer to its charter. This will be found in P. & L. Laws of 1866, ch. 352. The power of this corporation to improve the Wolf river is conferred by sec. 2 of that act, which reads as follows: "The said *Keshena Improvement Company* shall have power to improve the head-waters of Wolf river, from the south line of township twenty-nine north, of range fifteen east, in Shawano county, Wisconsin, to the north line of township thirty-one north, of range fourteen east, in Oconto county, Wisconsin, by deepening the channel, blasting rocks, closing up side-cuts, building dams and wing-dams and side-booms, and such other means as shall be necessary to the end proposed, so that loose saw-logs may be run the whole

distance *from one of said points to the other* in said waters during the ordinary spring freshets."

The act further provides "that the company shall be subject to the provisions of the mill dam law relative to damages on account of overflowing lands in making said improvement." From the description of the lands of the plaintiff charged with having been overflowed by means of the defendant's dam at the lowest point of said improvements, the said lands are over twenty miles below that point on the river.

1. It would seem to be perfectly plain from the above language of the defendant's charter that the company had no right to flow any lands below that point. The works are all to be above that point, and there is provision made for flowing lands above that point by means of said improvement, and for compensation for such flowing under the mill dam law. This remedy was no doubt intended by the legislature to apply to all flowing of the lands of others, occasioned by the works of the company. It is contended by the learned counsel of the appellant that, although the flowing of lands and making any improvement below the dam are not expressly authorized by the terms of the charter, yet, as the dams at that point were constructed to detain the water so as to facilitate the running of logs above that point, it must have been contemplated by the act that such detained waters would or should be allowed occasionally to pass said dam to swell the river below to create the same facility for running logs on the river below. This would necessarily include the improvement of the river below to any distance for such purpose, without making any provision for compensation for overflowing the lands of owners below the dam throughout the whole undetermined distance. It is not provided that the company may run logs below the dam, and charge tolls therefor; but for running logs within the above-stated limits of the improvement tolls

are collectible when they arrive at the " Wolf River Boom Company's boom," where they could be separated, and the ownership thereof be ascertained.· Such important corporate powers cannot be implied as incident and necessary to carry into full effect the powers expressly granted. It would be giving this charter a looseness and latitude of construction never before given to any other.

2. It is suggested, rather than argued, that the remedy for the flowing of the plaintiff's lands by means of this dam is exclusively under the general mill dam law, or the railroad condemnation law,— under ch. 318, Laws of 1882, amending sec. 1777, R. S. If the charter of the company does not authorize the flowage complained of, the exclusive remedies so suggested have no application, as a matter of course, and they need not be further considered. It is necessary to assume that it is incidental to the improvement provided for, or necessary to carry out the objects of the charter, that the waters of the Wolf river should be discharged from the dam in such volume as to flood the river below and overflow the plaintiff's land. It does not appear in this case, and we cannot take judicial knowledge, that the navigation of the river anywhere below this dam needs or requires any such improvement. *Non constat* the natural depth and flow of such portion of the river afford ample facilities for the running of logs on the same, without any such improvement as raising the waters to an unusual and unnatural height by discharging floods from the dam. At all events, the company has neither any right over or interest in such an improvement.

3. It is contended with some plausibility that this injury to the plaintiff's land being incidental to and remotely consequential from this public improvement, made by the state through the agency of this corporation, is *damnum absque injuria*, under the authority of *Alexander v. Milwaukee*, 16 Wis. 247.

But we have seen that this injury is not a consequence of or an incident to this improvement, nor is it at all necessary. The building of the dam has not caused the waters of the river below to injure any one, or to flow the plaintiff's land. There is no possible relation between the dam and this flowage. Flooding the river below is the wilful and unnecessary act of the company. They have the full benefit of their improvement by detaining the waters at the dam, so as to increase the facility of running logs above it by making the river above more navigable. To improve its navigability below was neither necessary nor authorized. Such an occasional flooding of the river may be an injury to its navigability for logs and lumber, rather than a facility or improvement, so far as we know from the case presented on the demurrer.

This and the *Alexander Case* are essentially different. In that case the injury was merely incidental and accidental, depending upon the recurrent winds and storms, which might cause the waters of the lake to overflow the plaintiff's premises by the remote cause of the improvement. Here the submergence of the plaintiff's lands was the proximate and direct consequence of the improvement, and which must have been anticipated and contemplated when the dam was constructed, just as much as the overflowing of any lands above or the taking thereof by means of the dam, for which compensation is provided. But this depends upon the concession that the injury to the plaintiff's lands was a natural consequence of the dam. It would be as reasonable to say that the overflowing of the lands above the dam caused an injury which was *damnum absque injuria* as the submergence of lands below, under the rule in the *Alexander Case*. As well might we say that taking the lands of private owners by submergence by means of any mill dam built by the state directly, or through the agency of a corporation, is without a remedy for damages or com-

pensation. The charter of this company, which provides for compensation in such cases, is a denial of such a claim.

It is not necessary to consider the other cases cited by the learned counsel of the appellant, from this and other states, sustaining and approving the doctrine of the *Alexander Case*, on account of their clear inapplicability. Here the lands of the plaintiff, by the reason of this flowage, were rendered entirely and permanently worthless for the purposes for which they could be used, and have been abandoned by the owner,— a complete taking of the property for the public use. To deny the plaintiff compensation or damages would be as unconstitutional as unjust. We conclude, therefore, that upon any tenable theory, and by undisputed authority, the plaintiff is entitled to the common-law remedy he has sought in this action. With all due respect to the very able and plausible brief of the eminent counsel of the appellant, we think the question involved is very plain and elementary under the facts stated in the complaint, and under the charter of the company, and not within the authorities cited to sustain the demurrer, to which the complaint is not liable.

*By the Court.*— The order overruling the demurrer is affirmed, and the cause remanded for further proceedings according to law.