## ZEPPENFELD ET AL. *v.* FRANKLIN MOTOR SERVICE COMPANY.

[No. 11,172.    Filed March 9, 1922.]

1. NUISANCE.—*Private Nuisance.*—*Statutes.*—A nuisance within the terms of §291 Burns 1914, §289 R. S. 1881, is a private nuisance to any person who sustains in his person or in his property any special injury different from the public. p. 694.

2. NUISANCE.—*Private Nuisance.*—*Relief.*—Any condition which causes another reasonably to be constantly apprehensive of injury to his life or property constitutes a private nuisance to such person for which injunction will lie. p. 694.

3. EVIDENCE.—*Judicial Notice.*—*Explosive Character of Gasoline.*—Courts will take judicial notice of the inflammable and explosive character of gasoline. p. 694.

4. NUISANCE.—*Injunction.*—*Complaint.*—*Sufficiency.*—A complaint alleging that defendant had erected and intended to use two gasoline storage tanks with a capacity of 16,000 gallons each, in a residence district, and that such tanks were so constructed, in violation of the rules and regulations of the fire marshal, as to be a menace to property in the neighborhood, *held* to allege that the tanks were a private nuisance as to property owners in the vicinity. p. 697.

From Johnson Circuit Court; *Fremont Miller,* Judge.

Action by Loui Zeppenfeld and others against the Franklin Motor Service Company. From a judgment for defendant, the plaintiffs appeal. *Reversed.*

*R. M. Miller, H. C. Barnett* and *O. S. Barnett,* for appellants.

*White & Owens, Watson, Kane & Ross, Robert D. McCord* and *Adolph Schreiber,* for appellee.

NICHOLS, J.—Complaint by appellants in three paragraphs to enjoin the use by appellee of either or both of two metal tanks, each of 16,000 gallon capacity, near appellants' residences, by placing gasoline and other dangerous liquids therein.

The first paragraph avers that appellee is the owner and in possession of certain real estate, in the city of Franklin, Johnson county, Indiana, bounded on the south by Jefferson street, and on the west by Walnut street, on the north by an alley, and on the east by the F. F. and M. Railway, and is located at the edge of the business district of said city and at the beginning of the good residential section thereof; that appellants are severally the owners of their respective residences and dwelling houses in the immediate neighborhood, said buildings ranging in value from $5,000 to $10,000, each of which will be injuriously affected by the location and use of the tanks as hereinafter set forth. That appellee has located upon its said real estate two immense metal tanks, of the capacity of 16,000 gallons each, and together of the total capacity of 32,000 gallons, and is threatening to and will fill them with gasoline or other high explosive substances unless restrained. That the use of said tanks for the purpose of storing gasoline or other high explosive, because of their highly explosive character will be a menace to appellants' respective selves and families, greatly lessen the value of their said dwelling houses and will cause them to live in constant fear and apprehension of death from explosion, so interfering with the comfortable enjoyment of their respective lives or properties, thereby causing them an irreparable injury.

The second paragraph contains the same averments as the first, but more definitely describes the situation as follows: Said tanks are located within seventy feet of the main line of the Big Four Railway, and immedi-

ately east of said main line and but a few feet therefrom is located the switch of said railway upon which the said railroad will place its tank car while transferring gasoline or other liquids to said tanks; that said car while so transferring its contents to said tanks would stand within eighty feet of a good frame dwelling house with a shingle roof, such house being within eighty feet of tanks. Said tanks are located within forty-eight feet of the improved portion of Walnut street, an improved thoroughfare, within 300 feet of the plant of the Graham Manufacturing Company's building, a large building wherein among other things are stored, from time to time, more than one million feet of lumber, within 150 feet of an electric plant and power house, which has electric wires running from it, carrying a voltage of 33,000, and which wires are carried immediately over where gasoline is being taken, or will be taken from said tank cars of said railroad, and they are within 250 feet of an artificial gas holder of large capacity; that a brick dwelling house of appellant Johnson is within seventy feet of said tanks, and a frame dwelling house of said Johnson is within ninety feet thereof, and another frame dwelling of said Johnson is within 100 feet thereof, and the brick stucco house of appellant Mason is within eighty feet thereof, the brick dwelling of appellant Zeppenfeld is within 100 feet, the frame dwelling of appellant Miller is within 200 feet, the frame dwelling of appellant Sullivan is within 300 feet, and the frame dwelling houses of appellant La-Grange are within 300 feet thereof. That east of said tanks, and within about twenty-five feet is a large open ditch, about ten feet deep and about twenty feet in width at the top, wherein gasoline vapors are liable to accumulate in dangerous quantities, which ditch enters a stone culvert under said Jefferson street, the south

end of which is about fifty feet from said electric plant and seventy-five feet of said artificial gas holder. That said tanks are not buried three feet under ground, as required by the rules of the state fire marshal's office of the State of Indiana, but the tops of said tanks are two feet above the top of the surrounding ground, and are within ten feet of the brick wall of a building on the south and two feet of the brick wall of a building on the west, in violation. of said rules. ' That under the end of one of said tanks and in close proximity thereto are two storm sewers side by side, at least twenty-four inches in diameter, constructed of cement tile, without the joints being in any way sealed, or in any other manner preventing gasoline or other liquids from entering the said sewers. That said two sewers reach northwardly to· Madison street, where they are joined at the southwest intersection of Madison and Walnut streets, within forty feet of the residence of appellant Miller, and within 160 feet of the residence of appellant Sullivan; that at said last named point said two sewers are joined to a stone culvert reaching across said Madison street, and that the northern end of said culvert is joined with one of said tiles of like dimensions, so loosely laid, which continues in a westerly direction passing under frame residences within seventy or seventy-five feet of the residences of said Sullivan and Miller. That two pipes, firmly attached to said tanks, reach from said tanks to a point near said railroad switch, for the purpose of transferring gasoline, or other liquids from the said railroad to said tanks. That said pipes reach across said open ditch at such a height as the water in said ditch, known as "Roaring Run" will reach the same, and that during the highwater in said run which frequently occurs, said water and debris, which it is liable to carry will break open said pipes, so that such liquids will escape therefrom, and is liable

to wrench said tanks. and their connections therewith, thus affording an escape for said liquids. That from the fact that the earth on the north of said tanks is non-absorbent clay and that on the south of said tanks is a brick foundation and wall reaching down far into the ground, which foundation and wall is within a few feet of said tanks, and that within twenty-five feet of the east end of said tanks is a large open ditch, there is not a sufficient opportunity or capacity for the absorption of gasoline should the same escape from said tanks. That gasoline is an exceedingly volatile, inflammable and explosive liquid as is its vapors, and very dangerous. That should the gasoline, either by leakage, effects of lightning, or by violence of any kind be released from said tank, or become exposed, or the vapors thereof, either in the air, ground, said ditch or said sewer, the same is liable to become ignited and destroy by fire or concussion, or from flying debris of nearer buildings, said appellants' properties. That should gasoline or the vapors thereof enter the said sewer, the same would be liable to flow under the buildings located over the same, and should the same become ignited the concussion therefrom, and the debris of said buildings would be liable to injure appellants' properties. That all said damages and dangers to said property, are likewise dangerous to the lives and limbs of appellants' families. That the location of said tanks at said place and the placing of gasoline therein is dangerous to appellants' property, and will be a continual menace to appellants and their families, so that they and their said families will live in continual fear, and the comfortable use of said respective properties will be destroyed, the cost of insurance greatly increased and the values thereof greatly reduced, and all to appellants' irremediable damage.

The third paragraph contains substantially the same

averments as the first and second with additional averments of hazard to the effect that said tanks are unlawfully installed and in violation of the rules and regulations of Indiana state fire marshal department, in this: That §11 of the rules and regulations contains the following provisions, to wit: "Sec. 11. Before any installation is covered from sight, a notification in writing shall be given the State Fire Marshal, who shall, within forty-eight hours after the receipt of such notification, inspect the installation and give his written approval or disapproval." That appellee has covered said tanks from sight, by placing earth over them, but before so doing did not give said fire marshal any such notice, or any notice, nor has appellee procured any approval of such installation. That said tanks have been and are unlawfully installed, and in violation of said rules and regulations in this, that §38 thereof contains the following provision: "Sec. 38. Tanks located underground shall have top of tank at least three feet below the surface of the ground, and below the level of the lowest pipe in the building to be supplied." That said tanks do not have their tops at least three feet below the surface of the ground, but are about two feet above the surrounding ground, and are covered with about two feet of ground in the form of a ridge over said tanks. That the location and proposed use of said tanks are unlawful and in violation of said §38 in this, that said section provides that: "Sec. 38.  *  *  * The limit of storage permitted shall depend on the location of tanks with respect to the building to be supplied and adjacent buildings, as follows: (a) Unlimited capacity if lower than any portion of a building within a radius of fifty feet; (b) 20,000 gallons total capacity if lower than any portion of a building within 30 feet radius; (c) 5,000 gallons total capacity if lower than any portion of a building within 20 feet radius." That

appellee has located said tanks within ten feet on the south thereof and within four feet on the east thereof of the walls of the buildings to be supplied with gasoline and other inflammable liquids, said tanks being lower than the walls of said buildings, and is threatening to and will place such gasoline in said tanks and each of them unless restrained. Averments of the exceedingly volatile, inflammable and explosive nature of gasoline follow and then that appellee has erected a large public garage on said real estate, within a few feet of said tanks, in which it is its intention to house, for care, self-propelled vehicles containing in the tanks thereof inflammable liquids for power, and that said building is connected with said two tanks by metal pipes, and should said building be destroyed or violently injured, it would destroy the connection between the same and said tanks and permit gasoline or other dangerous and volatile liquids to escape in the surrounding air, and that said garage has been unlawfully erected, in violation of the rules and regulations of the fire marshal department, in this, that §1 thereof provides that "* * * all plans of such buildings shall be filed with the Building Inspector and shall also be submitted for approval of the State Fire Marshal." And appellants say that no plans for such building have been filed with any building inspector and submitted for approval by the state fire marshal, and that said building has been erected in an unlawful manner, being in violation of §4 of such rules and regulations, which provides that: "No rooms, nor open or closed spaces of any character shall be permitted below the floor level in any building erected or used for garage purposes, and no floor shall be entirely below the street level." That in violation of said section said garage contains a large cellar, under the floor level of said building, and that the floor of said

cellar is about ten feet below the street level of the nearest adjoining street.

Appellee's demurrer to each of these paragraphs of complaint was sustained, and appellant refusing to plead further suffered judgment, and now assigns in this court error of the court in its respective rulings. The theory of each of the paragraphs of complaint is that of a threatened private nuisance. By statute a nuisance is defined to be whatever obstructs the free use of property so as to essentially interfere with the comfortable enjoyment of life or property, and as such is the subject of an action which may be brought by any one whose property is injuriously affected, or whose personal enjoyment is lessened. §§291, 292 Burns 1914, §§289, 290 R. S. 1881. Such nuisance is a private nuisance to any person who sustains in his person or in his property any special injury different from the public. *Kissel* v. *Lewis* (1901), 156 Ind. 233, 59 N. E. 478. Any condition created by one which causes another reasonably to be constantly apprehensive of injury to his life or property constitutes a private nuisance to such person, for which injunction will lie. *Tyner* v. *People's Gas Co.* (1892), 131 Ind. 408, 31 N. E. 61. "No man has a right to so use a dangerous species of property as to put the safety of others in peril." *Jamieson* v. *Indiana, etc., Oil Co.* (1891), 128 Ind. 555, 28 N. E. 76, 12 L. R. A. 652. That courts will take judicial notice of the inflammable and explosive character of gasoline is well settled.

The principles above announced are considered in the case of *Wittemore* v. *Baxter Laundry Co.* (1914), 181 Mich. 564, 148 N. W. 437, 52 L. R. A. (N. S.) 930, Ann. Cas. 1916C 818, where the court says: "We may grant that the storage of gasoline on premises adjacent to or adjoining the premises of another is not a private nui-

sance per se. It might, however, become such, considering the locality, the quantity, and the surrounding circumstances, and would not necessarily depend upon the degree of care used in its storage. Heeg v. Licht, supra; 29 Cyc 1177. We may also concede that in the instant case every precaution that human ingenuity has conceived has been made use of in the construction of the tanks as testified to by defendant's experts. Considering, however, the dangerous character of the substance and its power as an explosive, of which in this age of its wonderful development as a power to propel automobiles, traction engines, and airships, we can well take judicial notice, and also considering human fallibility, that accidents in the operation of the most perfect mechanism will occur, and all that it needs to change what is, when properly protected, a harmless agency to a most dangerous explosive is a careless person, can it be said that to have 20,000 gallons of such an agency stored within but a few feet of one's dwelling house is not sufficient to be an unreasonable interference with the comfortable enjoyment of that home?"

We have examined the cases cited by appellee and we note that generally the primary question which they decide is that public garages and filling stations in residential portions of cities do not constitute nuisances that may be enjoined. Each of the decisions is, of course, based on the peculiar circumstances therein involved. We are not, generally speaking, averse to this rule upon the condition that such public necessities are installed and conducted with due regard for the rights and safety of those in the locality likely to be affected thereby. We are not out of harmony with Hanes v. Carolina Cadillac Co. (1918), 176 N. C. 350, 97 N. E. 162, from which appellee quotes, and which is to the effect that automobiles are of such general use that they have become a part of the daily life of our people in

business as well as for pleasure; that public supply stations where gasoline is stored are essential and cannot be dispensed with; that establishment of such public conveniences and legitimate business even in a residential section of a town is not a nuisance *per se;* and that therefore where the thing complained of is not a nuisance *per se* and may or may not become so according to circumstances, and the injury apprehended, if any, is eventual or contingent, equity will not interfere and an injunction will not lie. In that case the injunction was dissolved but the defendant was only permitted to store 1,500 gallons of gasoline instead of 8,000 gallons as he had intended to do. None of the cases cited, except *Adams Co.* v. *Buchanan* (1920), 42 S. D. 548, 176 N. W. 512, involve the storage of a large quantity of gasoline as in the instant case. In the Adams case, a restraining order *pendente lite* had been granted from which the appeal, and the court dissolving it says that its denial would in no manner stand in the way of plaintiff's final recovery. It was there contemplated to install three tanks of 20,000 gallons capacity each, and the court says that the evidence was overwhelming in support of defendant's claim that the operation of their proposed plant would not constitute a menace to plaintiff's building. Thus it appears that the court's decision was based on the evidence and not on the pleadings, as in this case.

In the case of *McGuffey* v. *Pierce-Fordyce Oil Assn.* (1919), (Tex. Civ. App.) 211 S. W. 335, the suit was for damages for loss by fire of certain houses and their contents. The complaint charged the maintenance of a public and private nuisance by virtue of its warehouse, containing oil and gasoline, being in a thickly built up portion of the city in close proximity to many wooden buildings. There were 12,000 gallons of kerosene in two of said tanks and 300 gallons of gasoline in a third

Zeppenfeld *v.* Franklin Motor Service Co.—77 Ind. App. 687.

tank.   There was a judgment for the defendant which on appeal was reversed, the court saying:   "But that it charges a public nuisance in the respect that it charges that the oil and gasoline, etc., are high explosives, and were placed on defendant's property, which was situated in a thickly settled portion of the city of Abilene, upon a public street, etc., is clear, and that the facts pleaded constitute the elements of a private nuisance is equally clear, under all of the authorities."

By the averments of each paragraph of the complaint, we have here, not the ordinary garage and filling station with storage tanks of small capacity, such as are

4.   commonly seen, but a garage with tanks with a capacity of 32,000 gallons, with surroundings that are menacing to the safety of the residential neighborhood in which it is located.   In addition to this, as averred in the third paragraph of complaint, the tanks are being installed, and the garage erected without any regard for the rules and regulations of the state fire marshal's office, and no plans thereof have been filed with the building inspector, or approved by the fire marshal.   It is a part of the duties of this officer to prevent fires, and to control the storage, sale and use of combustibles and explosives, and for this purpose he is authorized to make rules and regulations not inconsistent with the laws of the state.   Certainly appellee may not violate these rules and regulations, and we can see no reason why appellants should not be accorded protection by their enforcement.   We hold that each paragraph of the complaint presents issues under which evidence may be heard that will determine whether or not the conditions created by appellee constitute a private nuisance.

The judgment is reversed with instruction to overrule the demurrer to each paragraph of complaint, and for further proceedings in harmony with this opinion.