CITY OF FRANKFORT *v.* SLIPHER.

[No. 13,057. Filed June 19, 1928. Rehearing denied October 5, 1928. Transfer denied December 7, 1928.]

*Kemp, Kemp & Russell* and *Harker & Irwin,* for appellant.

*Gifford & Gifford, William Robison* and *Thomas M. Ryan,* for appellee.

McMAHAN, J.—This is an action by Jay D. Slipher against the city of Frankfort for damages growing out of the pollution of Prairie Creek by the alleged unlawful deposit of sewage therein. From a judgment in favor of the plaintiff for damages, the city appeals.

The court found the facts specially and stated conclusions of law thereon. The facts as found are, in substance, as follows:

Appellee is, and since 1911, has been, the owner of a farm of 185 acres lying a short distance north of Frankfort. A natural watercourse, known as "South Fork of Wild Cat Creek," forms the north boundary of the farm for a distance of about 100 rods. Prairie Creek, a natural watercourse, has its source south of Frankfort, flows north through the city to and through appellee's land, and there unites with South Fork about twenty rods east of the northwest corner of appellee's land, and is the natural drainage for the city. In 1911, the city constructed a large main sanitary sewer extending from near the south boundary of the city north through the city and emptying into Prairie Creek, about 160 rods south of appellee's land. At the same time, lateral sewers were constructed and emptied into the main sewer. A number of other lateral sewers have been constructed and empty into the main sewer. This sewer system has been in continuous use by the city since 1911, and, through the lateral sewers, is connected with residences, stores and buildings, both public and private, and carries all the sewage from the city and is the only available outlet therefor into a natural watercourse.

Before the construction of the sewer, the water in these creeks was pure and wholesome and generally used by appellee and other landowners for watering stock and other agricultural purposes. The sewage so emptied into Prairie Creek consists of putrescent, poisonous, infectious and fecal matter, which pollutes the waters of

the stream, and gives off noxious and foul odors, which are carried to considerable distance from said streams. At times of high waters, the streams overflow the bottom lands on appellee's farm and, when the waters recede, large amounts of putrescent sewage gathers in bunches on the farm and become infected with vermin, and the water of said streams, ever since 1918, has been unfit for watering stock or for any other agricultural purpose, such pollution increasing yearly with the increase of sewage. Such sewage so emptied into and deposited along the streams and on appellee's farm is dangerous to public health, and has made the occupying of the dwelling houses on appellee's land uncomfortable and unsatisfactory, and interferes with appellee's use of his land. Sewage reduction plants are successfully operated in many other cities so that such sewage is and can be rendered pure and harmless. Appellant could, at a reasonable cost, have erected a sewage reduction plant, so that all of the sewage deposited in said streams could have been rendered pure and harmless. The city negligently failed to take any steps to erect a sewage reduction plant or to reduce the unwholesome and dangerous condition of the sewage. Appellant negligently deposited the sewage in said streams to the injury of appellee. By the use of modern methods, the city could have prevented polluting the streams and could have prevented any injury to appellee's land. The court also found facts relating to the extent of the damage to appellee's land.

Upon these facts, the court concluded as a matter of law: (1) That the law was with the plaintiff; and (2) that the plaintiff should recover $3,962.07. Judgment was entered in accordance with the conclusions of law.

Appellant concedes that a private individual has no right to pollute a stream of water to the injury of a lower

riparian owner, but contends: (1) That this rule does not, under the decisions of the Supreme and of this court, apply to municipalities, and that a city may lawfully discharge its sewage, without reduction or purification, into a stream which is the natural outlet, so long as the discharge of such sewage is without negligence; (2) that neither the evidence nor the facts found by the court are sufficient to establish a public nuisance; and (3) that §§8125-8134 Burns 1926, Acts 1909 p. 60, provide a method by which riparian owners along a stream polluted by city sewage may obtain relief and that appellee, having failed to avail himself of such statutory remedy, cannot maintain this action.

The contention that appellee could have obtained relief under §8125 *et seq.* cannot prevail. These sections simply provide a method by which the common council, the board of health of any city or town, the board of commissioners of any county, the trustee of any township, or ten per cent. of the electors of any city, town or village may file a complaint with the state board of health charging the pollution of the source of any public water supply, or that water of any stream, spring, lake or pond is being polluted, thereby materially injuring, for domestic use, the character of the water into which the same is discharged, to the injury of public health or comfort. As shown by the title of the act of which the above sections are a part, the statute gives the state board authority to enforce the provisions of the act for the protection of the public health. The statute is not available to an individual landowner like the appellee, who suffers a special injury different from that suffered by the public. The individual landowner must seek relief through the courts, as did appellee in the instant case.

The first and second contentions of appellant will be considered together.

Appellant argues that since it is, by statute, authorized to build and maintain an adequate system of sewers for the disposal of its sewage, it may lawfully discharge its sewage, without purification, into a stream which is the natural outlet, and that, so long as such discharge is without negligence, it is not liable to a person through whose land the stream flows, though the water of such stream is polluted and the rental value of such land is diminished thereby. In support of this contention, appellant cites and relies upon *City of Valparaiso* v. *Hagen* (1899), 153 Ind. 337, 54 N. E. 1062, 48 L. R. A. 707, 74 A. L. R. 305; *Penn, etc., Plate Glass Co.* v. *Schwinn* (1912), 177 Ind. 645, 98 N. E. 715; *City of Richmond* v. *Test* (1897), 18 Ind. App. 482, 48 N. E. 610; and *Stein* v. *City of Lafayette* (1892), 6 Ind. App. 414, 33 N. E. 912.

In *City of Valparaiso* v. *Hagen, supra,* the question before the court for decision was: May a municipality, acting in conformity to the statutes, skilfully and without negligence or malice, pursuing the only natural and reasonably possible line of drainage, be enjoined from discharging its sewage into a natural watercourse and thereby polluting its waters to the injury of the lower riparian proprietors? The court answered this question in the negative, and held the complaint did not state facts sufficient to constitute a cause of action because of a failure, "to aver the absence of skill or the want of due care, or that some other outlet could more reasonably be had, or that some other REASONABLE METHOD of disposing of the city sewage is available." It is to be observed that the Hagen case was an action to perpetually enjoin the city from discharging sewage in a stream which was the natural and only practical outlet for the sewer, and to enjoin the city from depositing the sewage upon the lands of the plaintiff or in the stream at any point. In the language of the court, there was in that case no pretense that there was, "any other possible

outlet, or practical means of disposing of sewage, or that the sewer was unskilfully or negligently constructed."

In *City of Richmond* v. *Test, supra*, the court found the sewers were constructed upon the BEST MODERN PLANS for constructing and discharging sewage, and there was nothing to show any negligence in either the construction or the operation thereof by the city. In the language of the court, the city was held not liable for damages, for the reason that there was no showing that the city had "failed to construct the sewers with due care or skill, or that the sewers were negligently operated and maintained." . That case was decided upon the authority of *Barnard* v. *Sherley* (1893), 135 Ind. 547, 34 N. E. 600, 35 N. E. 117, 41 Am. St. 454, 24 L. R. A. 568, where the controlling principle was stated thus: "Where, therefore, a work is lawful in itself, and cannot be carried on elsewhere than where nature located it, or where public necessity requires it to be, then those liable to receive injury from it have a right only to demand that it shall be conducted with all due care, so as to give as little annoyance as may be reasonably expected; and any injury that may result, notwithstanding such care in the management of the work, must be borne without compensation. It is then a case in which the interests and convenience of the individual must give way to the general good."

In *Stein* v. *City of Lafayette, supra*, Stein sued the city to recover damages for an injury alleged to have been done to his real estate by the wrongful and negligent acts of the city in improving an alley. The complaint alleged that the plaintiff became the owner of the real estate in 1885; that the grade of the alley was established by the city in 1879; that in 1881 the city, in. improving the alley, changed the grade previously established by lowering the surface thereof five feet, between certain cross streets, thereby preventing ingress

or egress to and from one of the cross streets into the alley and rendering it impossible to reach the rear part of the plaintiff's lot by ordinary vehicles of travel, and that, by reason of such change, large quantities of water had been caused to overflow and wash away the rear end of plaintiff's lot. The action of the court in sustaining a demurrer to the complaint was affirmed upon the theory that where an improvement is such that it cuts off ingress and egress to and from property, there could be but one recovery for damages resulting therefrom, whether present or prospective; that such recovery could only be had by the owner of the property at the time of the injury, and that the appellant, having purchased the property after the change in the grade, was not entitled to recover. While the judge who wrote the opinion discussed the liability of a municipal corporation for consequential damages resulting from the improvement of a street, the statements in relation thereto cannot be considered as of any controlling influence. The court, at that time, was composed of five judges. Two concurred in the result upon the ground that the gravamen of the complaint was the change in the grade of the alley, which was permanent, and that all damages accrued to the one who owned the land when the change was made. One judge concurred in the result, thus indicating his unwillingness to agree with or to concur in the reasoning as set out in the opinion. One judge, presumably being satisfied with the opinion, said nothing, so that the language used in the opinion is the expression of but two members of the court.

In *Penn, etc., Plate Glass Co.* v. *Schwinn, supra,* the appellee recovered a judgment against the appellant for damages caused by the pollution of a natural watercourse. In the course of the opinion, the judge who wrote the opinion, referring to the rule excepting cities

from liability for damages because of the pollution of a stream by sewage, said: "That doctrine grew up from a supposed necessity, but the same reasons which seemed to be grounds for the exception to the rule in regards to pollution of streams by cities are the very ones which must sooner or later reverse it. It is a matter of common knowledge everywhere, and the subject of recent legislation in this state, that the streams of pure and limpid water, which formerly traversed the state, have become cesspools of filth and breeders of disease, and are polluted to nausea, and we must certainly, and the sooner the better for the state and its inhabitants, take steps necessary to the removal of sewage from our streams, and their restoration to their natural condition, and certainly such exception as now applies to cities should never extend to manufacturing or commercial enterprises, if it be retained as to the cities. Two marked cases of the excepted class are *City of Valparaiso* v. *Hagen* (1899), 153 Ind. 337, 54 N. E. 1062, 48 L. R. A. 707, 74 Am. St. 305, and the cases on which it is based, recognized in *Weston Paper Co.* v. *Pope* (1900), 155 Ind. 394, 400, 51 N. E. 719, 56 L. R. A. 899, and in *City of Richmond* v. *Test* (1897), 18 Ind. App. 482, 48 N. E. 610, both of which in the opinion of the writer, are based on unsound premises. They are grounded on the supposed necessity of the rule, following the case of *Pennsylvania Coal Co.* v. *Sanderson, supra,* and *Barnard* v. *Sherley* (1893), 135 Ind. 547, 34 N. E. 600, 35 N. E. 117, 24 L. R. A. 568, 41 Am. St. 454.

"The rule of necessity thus declared must in and of itself inevitably force just the opposite doctrine, in the interest of the public health, the very thing supposed to be subserved by the rule, when it is daily becoming more and more apparent that the sewage in the streams is a real menace to the public health, and it is not a necessity,

because it can be otherwise provided for, with practicability and assured safety to the public health.

"Far preferable and more consistent, both with private rights and the public interest, that the streams shall be preserved without contamination, and as arteries adequate to carrying the floods of water, continually increasing in quantity and velocity by reason of the agricultural drainage, precipitating them quickly into streams, and that no supposed rule of necessity in order to the carrying on of a business, on account of its usefulness or necessity, or that it cannot be carried on without producing these results, nor the fact of skill and care to prevent it, or on account of the amount involved, can be allowed as an exception, nor can the riparian owner below be required to protect himself; the right is an incident of the title, and such is the law of this state."

In the instant case, the court finds that sewage reduction plants which successfully treat sewage from sewer systems like that maintained by appellant, so that the sewage can be deposited in streams of the size and character of Prairie Creek without causing a pollution thereof or any material injury or damage to a riparian landowner, could have been erected by appellant, at a reasonable cost, so that all of the sewage deposited in Prairie Creek could have been rendered pure and harmless before it was deposited in the stream, and that appellant thereby could have avoided all injury and damage to appellee's land; that, by reason of such failure to erect and maintain such reduction plant and treat the sewage, appellant negligently deposited the sewage in the stream; and that, by the use of modern methods and appliances, appellant could have prevented the injury to appellee's land. Here the court finds that there was a reasonable and practical means of disposing of the sewage by the installation of a modern method of its treatment, and that, if such method had

been adopted, the sewage could have been purified before being emptied into the stream and all injury and damage to appellee could and would have been avoided. The court further finds, as an ultimate fact, that appellant was negligent in failing to install and maintain such reduction or purification plant and that, in failing to treat the sewage, appellant was guilty of negligence in the manner and condition in which it discharged the sewage. The facts in the instant case are such as to clearly distinguish it from the Hagen and Test cases. In those cases, the pollution of the streams appears to have been necessary. In the instant case, the pollution of the stream was not necessary, but was brought about through the neglect and failure of appellant to adopt modern methods for purifying the sewage. We are not called upon either to approve or disapprove the doctrine as stated in the Hagen and Test cases. We deem it proper, however, to call attention to the fact that the doctrine announced in those cases has been rejected and criticised in every jurisdiction that has since spoken on the subject.

The Supreme Court of Wisconsin, in *Winchell* v. *Waukesha* (1901), 110 Wis. 101, 85 N. W. 668, 84 Am. St. 902, after stating that it could not agree with the Hagen case, said: "The authority granted to municipalities is to construct sewers, but subject to the general legal restrictions resting upon such corporations forbidding invasion of private rights by creation of nuisance or otherwise. This view of the legislative purpose is enforced by the consideration that, although liquid sewage must flow off along the general drainage courses of the vicinity, it is by no means physically necessary that it should carry with it the solids in an offensive or unhygienic condition: *Hackstack* v. *Keshena Imp. Co.*, 66 Wis. 439, 29 N. W. 240. It is a matter of common knowledge, and of proof in this case, that there are

practicable methods for the decomposition and practical destruction of such solids before delivering them into open watercourses; the most modern methods, as explained in the evidence here, being treatment in septic bacteria tanks, whereby the decomposition and resolution into inoffensive and innocuous fluids, gases, and mineral solids is greatly expedited. This method, it appears, could be installed at *Waukesha* at a cost approximating $5,000. It is not probable that the legislature has wittingly authorized the defilement, and almost destruction, of our streams, to enable such trifling measure of economy to municipalities. The great weight of authority, American and English, supports the view that legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance, and that it matters not whether such nuisance results from negligence or from the plan adopted. If such nuisance be created, the same remedies may be invoked as if the perpetrator were an individual."

To the same effect, see *Donnell* v. *Greensboro* (1913), 164 N. C. 330, 80 S. E. 377; *Atty. General* v. *City of Grand Rapids* (1913), 175 Mich. 503, 141 N. W. 890, 50 L. R. A. 473, Ann. Cas. 1915A 968; *Smith* v. *Silverton* (1914), 71 Ore. 379, 142 Pac. 609; *Platt Bros. & Co.* v. *Waterbury* (1900), 72 Conn. 531, 45 Atl. 154, 77 Am. St. 335, 48 L. R. A. 691.

In *City of Valparaiso* v. *Moffitt* (1895), 12 Ind. App. 250, 39 N. E. 909, 54 Am. St. 522, Moffitt recovered a judgment against the city for damages to his real estate caused by reason of the pollution of the water of a natural stream by reason of the discharge of sewage therein. The judgment was affirmed, the court, in the course of the opinion, saying: "A municipal corporation is liable in a civil action for erecting and maintaining a nuisance the same as a natural person."

In *Haag* v. *Board, etc.* (1878), 60 Ind. 511, 28 Am. Rep.

654, the complaint alleged that the board of commissioners had erected, and was maintaining, a pest house, on grounds belonging to the county, near a dwelling-house owned and occupied by the plaintiff, where persons afflicted with a malignant disease were treated, by order of the board; that by reason thereof the premises of the plaintiff had become unhealthy, the family of plaintiff infected with the same disease and the occupancy of the plaintiff's property unsafe and unpleasant. A judgment sustaining a demurrer to the complaint was reversed; the court, in the course of its opinion, says: "It is also a well recognized rule, that municipal corporations are liable for torts in certain classes of cases, including nuisances, in the same manner as natural persons. . . . Where, however, the act complained of is *ULTRA VIRES*—wholly outside of any of the powers possessed by the corporation—no such liability exists. . . . It is only where there has been some *abuse* of the authority conferred on the corporation, that an action can be sustained. . . .

"The charge in the several paragraphs of the complaint under consideration is, in legal effect, therefore, that the appellee committed the grievances complained of on certain lands belonging to Vanderburgh county, in the possession and under the control of the appellee, by a misuse and mismanagement of such lands. *Addison supra,* says: 'A municipal corporation has no more right to maintain a nuisance than an individual would have, and for a nuisance maintained upon its property, the same liability attaches against a city as to an individual.' We regard the rule thus laid down as correct in principle, and as equally applicable to a county."

*City of New Albany* v. *Slider* (1899), 21 Ind. App. 392, 52 N. E. 626, was an action against the city for damages occasioned by the depositing of garbage, rubbage and filth, thereby creating a nuisance. The question there

was whether a city could create an actionable nuisance, and the court, after quoting the statute defining a nuisance and making the same subject to an action by any person whose property is injuriously affected or whose personal enjoyment is lessened by the nuisance, said: "It may be true, the complaint describes a public nuisance, but it also contains allegations showing special injury to appellee. The statute in such cases gives any one where property is injurously affected, or where personal enjoyment is lessened, a right of action."

In *Peck* v. *City of Michigan City* (1898), 149 Ind. 670, 49 N. E. 800, the injury complained of was the discharge of sewage into the basin of a harbor. The court there called attention to the fact that the negligence alleged was not alone in the construction of the sewer but also in continuing to empty the sewage into the basin without employing any means to remove it or prevent the nuisance resulting. And, at page 682, the court, referring to former decisions of the Supreme Court, said: "If a public work results in a nuisance these holdings support the liability of the corporation." The court quoted at length from *Franklin Wharf Co.* v. *City of Portland* (1877), 67 Me. 46, 24 Am. Rep. 1, where the court, after referring to a statute giving the city a right to construct a sewer, held the city had the right to conduct the rubbish and impurities to the sea where it would ordinarily be so distributed and dissipated as not to create a nuisance, and if, for any reason, other than the fault of the plaintiff, this result was not produced, it was the duty of the city to remove the deposits so as to prevent their becoming a nuisance, public or private, and that the right to construct a sewer did not include the right to create a nuisance.

In *Brayton* v. *Fall River* (1873), 113 Mass. 218, 18 Am. Rep. 470, it was said: "The defendants had the right to make these sewers and drains, and to discharge

them into the sea. But this right is subject to some limitations. It does not include the right to create a nuisance, public or private. If the sewers or drains are so built or managed as to create a public nuisance, the defendants are indictable; if a private nuisance is created, they are answerable in damages to the person injured."

Section 298 Burns 1926, §289 R. S. 1881, provides that whatever is injurious to health, or indecent, or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action. The next succeeding section provides that such action may be brought by any person whose property is injuriously affected, or whose personal enjoyment is lessened by the nuisance.

By §2647 Burns 1926, §2066 R. S. 1881, it is made a public nuisance and an indictable offense for any person to cause or suffer any offal, filth or noisome substance to be collected or remain in any place to the damage or prejudice of others, or of the public, so as to injure the property of others or, essentially, to interfere with the comfortable enjoyment of life.

If a private corporation or a natural person had done the acts which the court finds appellant did, such private corporation or person would, without any question, have been guilty of creating and maintaining a public nuisance, and liable in damages to any one sustaining to his person or to his property special injury different from the public's. *Zeppenfeld* v. *Franklin Motor Service Co.* (1922), 77 Ind. App. 687, 134 N. E. 487; *Reed* v. *Cheney* (1887), 111 Ind. 387, 12 N. E. 717.

It was held by this court in *City of Valparaiso* v. *Moffitt, supra,* that a city was liable to the owner of real estate for damages occasioned by the discharge of sewage into a natural watercourse. This was upon the theory

that a municipal corporation is liable in a civil action for erecting and maintaining a nuisance the same as a natural person. Other Indiana cases to the same effect are: *Stein* v. *City of Lafayette, supra; Haag* v. *Board, etc., supra; City of New Albany* v. *Slider, supra; City of New Albany* v. *Armstrong* (1899), 22 Ind. App. 15, 53 N. E. 185; *Anable* v. *Board, etc.* (1904), 34 Ind. App. 72, 71 N. E. 272, 107 Am. St. 173; *Moore* v. *City of Bloomington* (1911), 51 Ind. App. 145, 95 N. E. 374; *Pritchett* v. *Board, etc.* (1908), 42 Ind. App. 3, 85 N. E. 32.

Boards of commissioners are required by law to provide a jail. §5935 Burns 1926, §5748 R. S. 1881. And a property owner cannot enjoin the commissioners from doing that which is required by law. The commissioners, however, can be required to see that the construction and the management afterwards be such as to cause as little inconvenience and discomfort to those living near as is consistent with the public purpose to be served. The statute requiring the county commissioners to erect a jail does not carry with it the authority to so conduct and manage it as to create a nuisance. For annoyances which are necessarily incident to a jail, the law awards no damages. A property owner living in the vicinity of a jail has the right to require that it be conducted with ordinary care, and with proper regard for the rights of others, and that no unnecessary inconvenience or nuisance shall be caused by it. *Pritchett* v. *Board, etc., supra.*

*Anable* v. *Board, etc., supra,* was an action by the appellant against the board of commissioners for damages on the theory that a pest house was a nuisance, and, as such, was offensive to sight, dangerous to the plaintiff's property, an obstruction to the free use of such property and destroyed the value of the same. The court, after calling attention to the fact that a pest house was a public necessity, and, being authorized by law, its erection could not be a nuisance PER SE, said: "Right of

action might arise if such a house were negligently or wrongfully conducted (citing authority), but the pleading does not present this question." The reasoning of the court in discussing the question there involved, and in construing the complaint as one for the destruction of property rights, is so applicable to the case at bar that we quote at length therefrom. Beginning at page 76, the court said: "It is quite true that the distinction must be kept in view between the exercise of the police power and the exercise of the right of eminent domain— that in the latter case actual compensation must be made to the owner of property taken or injured, and in the former the injury is either *damnum absque injuria*, or the owner is considered compensated by sharing in the general benefits resulting from the exercise of the power. However, more important than this distinction is the constitutional guaranty that no man's property shall be taken by law without just compensation. And it must be conceded that the exercise of a power which destroys property, or its value, or takes away any of its essential attributes, deprives the owner of such property. So that if a municipality, in the exercise of the police power, should do an act which renders the property of an individual worthless, and which would be, in effect, a taking of the property, such act should not be permitted to stand except upon a showing that the act as done was most clearly and unequivocally authorized. And the distinction must be kept in view between an exercise of the police power whereby private property, contaminated with a dangerous disease is summarily destroyed, and private property, itself not dangerous to the public, is directly injured. The immediate danger to the public health which justifies the exercise of the power in the former case, does not exist in the latter.

"It is not a sufficient answer to a person whose property has been injured or destroyed to say simply that the

act complained of was done in the exercise of the police power for the preservation of the public health. It can not be said, no matter how comprehensive the power, that a municipality might locate a pesthouse in the midst of a thickly settled neighborhood, or that the power to erect a pesthouse carries with it the further power to locate it at a place where it will injure others. The infliction of an injury upon another is not necessarily the natural result of the erection of a pesthouse, nor is it an inevitable consequence of an exercise of the power to erect and maintain it. The right to do the particular act does not essentially carry the right to do so as to inflict injury upon an innocent individual. The citizen does not hold his property subject to the exercise of the police power by the state or municipalities to which it has been delegated, but he holds it subject to the *proper* exercise of such power. And in determining whether there has been a proper or an unwarranted exercise of discretion in locating a pesthouse at a particular place regard must be had to the location itself, the present necessities of the particular case, and other pertinent facts and circumstances.

"Moreover, if it be conceded that the state might direct some particular specific act to be done in a specified manner, which would necessarily, under any condition, result in the creation of what would be, without such authorization, a private nuisance, yet in the absence of specific legislative direction as to the manner in which the act should be done, it should not be assumed that the state, *public necessity not requiring it,* would so exercise the power as to injure the property of an individual.

"It must be noted that the statute simply makes it the duty of the board 'in all cases to take prompt action to arrest the spread of contagious diseases.' The board is not required by the statute to erect and maintain a

pesthouse. . . . If the board pleads statutory sanction in justification of an act which the general rules of law constitute a nuisance to private property, it should show either that the act is expressly authorized by the statute, or that it is *plainly* and *necessarily* implied from the powers expressly conferred."

*Hill* v. *Managers, etc.* (1879), 4 Queen's Bench Div. (Eng.) 433, 4 App. Cas. 193, was an action for damages and to enjoin the use of a smallpox hospital, on the ground that it was a nuisance. The hospital, although authorized by parliament, was declared to be a nuisance. Lord Watson, in the course of his opinion, referring to the claim that the legislature had granted authority, said: "If the order of the legislature cannot be implemented without nuisance, they cannot, in my opinion, plead the protection of the statute; and, on the other hand, it is insufficient for their protection that what is contemplated by the statute cannot be done without nuisance, unless they are also able to show that the legislature has directed it to be done. Where the terms of the statute are not imperative, but permissive, when it is left to the discretion of the persons empowered to determine whether the general powers committed to them shall be put into execution or not, I think the fair inference is that the legislature intended that discretion to be exercised in strict conformity with private rights, and did not intend to confer license to commit nuisance in any place which might be selected for the purpose."

The Moffitt case was cited with approval in *West Muncie Strawboard Co.* v. *Slack* (1904), 164 Ind. 21, 72 N. E. 879, where it was held that the act of the Strawboard company in polluting a watercourse constituted a public nuisance, and that the parties creating the same were liable to any one specially damaged.

"The king cannot license the erection or commission of a nuisance, nor can a municipal corporation do so."

*Chalkley* v. *City of Richmond* (1891), 88 Va. 402, 14 S. E. 339, 29 Am. St. 730, citing Dillon, Municipal Corporations §§660, 1039, note 1.

Under the facts as found by the court, public necessity did not call for or require the pollution of the water of either Prairie Creek or South Fork, and since appellant, by the expenditure of a reasonable sum of money, could have adopted a method of purifying the sewage, the judgment should be affirmed.

We express no opinion as to what course we would have taken had the facts brought the case within the doctrine of the Hagen and Test cases. In view of the criticism of those cases, we refuse to extend the rule to the instant case.

Judgment affirmed.

Dausman, J., absent.